STATE OF NORTH CAROLINA v. HENRY LOUIS JACKSON

No. 598A82

(Filed 9 August 1983)

1. **Criminal Law § 98.2— sequestration of witnesses prior to trial—discretionary matter**

    Defendant failed to show that the trial judge abused his discretion in denying defendant's motion to sequester two witnesses who were housed in the same jail cell.

2. **Criminal Law § 92.4— consolidation of multiple charges against defendant proper**

    Defendant failed to show the trial court abused its discretion in consolidating for trial the charges of kidnapping, robbery with a dangerous weapon, and murder in the first degree where all the evidence showed that defendant's acts were part of a single scheme or plan to take the victim's money by force. G.S. 15A-926(a).

3. **Constitutional Law § 62; Criminal Law § 135.3; Jury § 7.11— "death qualification" of prospective jurors—no denial of constitutional rights—death penalty not cruel and unusual punishment**

    There was no merit to defendant's arguments that "death qualification" of prospective jurors denied him his right to a fair trial; that the death penalty is cruel and unusual punishment; and that the court erred in denying his motion to empanel different juries for the guilt determination phase and the sentencing phase of his trial.

4. **Bills of Discovery § 6; Constitutional Law § 30— disclosure of State's evidence**

    Where the prosecution gave defense counsel the pretrial statements of two of the State's witnesses at trial, before the witnesses took the stand, the State satisfied the requirements of due process and G.S. 15A-904(a). Further, the substance of the witnesses' statements were incorporated in affidavits used to support the State's application for search warrants of defendant's residence and were a part of the public record.

5. **Jury § 6— capital case—denial of individual voir dire—sequestration**

    Defendant failed to establish that the trial court abused its discretion in denying defendant's motion for sequestration of potential jurors and individual voir dire of prospective jurors. G.S. 15A-1214(j).

State v. Jackson

**6. Criminal Law § 43— map—used to illustrate testimony**

The trial court properly allowed a map depicting the rivers and roads in an area in which the crimes occurred into evidence where testimony provided sufficient foundation to permit the map to be introduced for illustrative purposes, and where the map's probative value outweighed any prejudicial effect it might have had. Further, the court properly instructed the jury concerning the use it might make of the map.

**7. Searches and Seizures § 10— search warrant supported by probable cause**

The trial court properly introduced into evidence items seized from defendant's residence by authority of two search warrants where one warrant was based on information provided to agents from two accomplices, the accounts were based on firsthand knowledge, were given four days after the commission of the crimes, and were consistent with one another. As to the second warrant dealing with .22-caliber projectiles at defendant's residence, under the totality of the circumstances, there were probable cause to believe that projectiles might have been found at defendant's residence.

**8. Kidnapping § 1.2— insufficient evidence—judgment and sentence arrested**

Where the State's evidence tended to show that defendant entered the victim's automobile on the pretext of getting a ride to town, and there was no evidence allowing more than mere conjecture that defendant used his misrepresentation to confine, restrain or remove the victim against his will during their ride together, the Court must rule that the State failed to prove beyond a reasonable doubt that defendant restrained, confined or removed the victim within the meaning of G.S. 14-39 and the judgment and sentence for the kidnapping charge must be arrested.

**9. Robbery § 4.3— armed robbery—sufficiency of the evidence**

The trial court properly denied defendant's motion to dismiss an armed robbery charge against him where the evidence tended to show that defendant thought the victim had $1,000 or $2,000 on him; that defendant entered the victim's automobile with a .22-caliber pistol; that within hours of entering the victim's vehicle defendant told two accomplices that he had to kill the victim because he did not give him any money; that defendant, who had no money before his encounter with the victim, gave his accomplices cash shortly after leaving the victim, keeping some for himself; and that the victim's body was found the day of the crimes, shot through the head twice, with his wallet missing.

**10. Homicide § 21.6— murder in the first degree—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss the charge of murder in the first degree where the evidence tended to show that defendant, armed with a .22-caliber pistol, entered the victim's car with the intent to rob him; that the victim was found dead, his wallet missing; and that shortly after leaving the victim, defendant told two accomplices that he had killed the victim, and defendant gave the two some cash. Because the killing was committed in the perpetration of robbery with a dangerous weapon, the crime was murder in the first degree. G.S. 14-17, G.S. 15A-1227.

**11. Robbery § 6; Homicide § 31.1— robbery merged with conviction of murder in first degree—sentence for robbery error**

Where defendant was convicted of the charge of murder in the first degree based on a theory of felony murder, with armed robbery constituting the underlying felony, the trial court erred in sentencing defendant separately for the robbery since the armed robbery conviction was merged with his conviction of murder in the first degree.

**12. Criminal Law § 135.4— conviction under felony-murder rule—instructions during sentencing phase proper**

The trial court did not commit error in instructing the jury during the sentencing phase of defendant's trial that it would be required to consider the evidence offered during the guilt or innocence phase of the trial where the only evidence the jury could consider was that presented during the guilt phase of the trial since no new evidence was submitted during the sentencing proceeding, and where the instructions did not suggest that the armed robbery could be considered an aggravating circumstance.

**13. Homicide § 31.1— first degree murder conviction—death sentence—proportionality review—death sentence disproportionate**

Upon review as required by G.S. 15A-2000(d)(2), the Court found that the jury did not impose the death sentence under the influence of passion, prejudice or any other arbitrary factor; however, after reviewing the facts of the previous life sentence and death sentence cases in the proportionality pool, the Court found that although the killing of the victim was a senseless, wanton murder, it did not rise to the level of those murders in which the Court has approved the death sentence upon proportionality review. Therefore, the sentence imposed was disproportionate within the meaning of G.S. 15A-2000(d)(2), and the Court imposed a sentence of life imprisonment in lieu of the death sentence.

APPEAL by defendant from judgments entered by *Kivett, J.,* at the 30 August 1982 Special Criminal Session of Superior Court, UNION County. Heard in the Supreme Court 6 June 1983.

Defendant was charged in indictments proper in form with murder in the first degree, kidnapping, and robbery with a dangerous weapon. He was convicted of each charge and, for the murder, was sentenced to death.

Evidence for the state tended to show the following. On 24 March 1982 at 9:00 a.m., Joseph Lilly went to defendant's house, just north of Mt. Gilead, North Carolina. The two men then went to Charles Dunn's sawmill in Exway and purchased some wood. Before he and Lilly left the mill, defendant, who was unemployed at the time, asked Dunn about a job. Defendant and Lilly unloaded some of the wood at defendant's house and the remainder

at Lilly's. At Lilly's they joined James Pemberton, who was en route to a fishing excursion at a pond at the C.C. Camp one and one-half miles away.

After fishing at the C.C. Camp pond for some time, the three men decided to go to a pond in Exway. Lilly, who had driven them to the first pond, said that his truck did not have enough gasoline to go to and from Exway. Defendant volunteered to pawn a chain saw he had at his house so that the group could purchase some gasoline. The trio went back to defendant's house, picked up the chain saw, and pawned it for twenty-two dollars, five dollars of which was used to purchase gasoline. The remaining seventeen dollars was used to purchase two six-packs of beer, a twelve-pack of beer, and a bag of pork skins.

Lilly later testified that when defendant got out of the truck to take his chain saw into the store where it was pawned, Lilly observed him take a .22-caliber pistol out of his pocket and put it on the seat of the truck. Later, defendant placed this weapon in the glove compartment of the truck.

Lilly, Pemberton, and defendant proceeded to a pond in Exway, where they fished and drank beer. When they stopped fishing, they left the pond and proceeded west on N.C. highway 73 in Lilly's truck. Near the Little River bridges they passed George Thomas McAulay's car. McAulay, who lived in Mt. Gilead, was driving a tan and green Lincoln Continental automobile at the time. Defendant recognized McAulay and told his companions that McAulay might have one or two thousand dollars on his person. Defendant got out his gun, ordered Lilly to turn the truck around, and threatened to shoot Lilly and Pemberton if they said anything. They crossed the Little River bridges again, but by then McAulay was out of sight. They turned off N.C. 73 onto a secondary road that went to Exway by one Lonnie Green's house. When they passed the house, they observed McAulay's car parked in front of it. Defendant ordered Lilly to drive into Exway, turn left at the intersection, and drive down the secondary road to a place known as the "ant hill," where a bend in the Little River came near the road. There defendant ordered Lilly to stop and defendant got out of the truck.

George Thomas McAulay arrived at Lonnie Green's house around 3:00 p.m. on Wednesday, 24 March 1982. He was seventy-

one years of age, overweight, and had recently suffered both a heart attack and a stroke, so that he used a cane with which to walk. McAulay left Lonnie Green's house about 5:00 p.m. and headed back to Mt. Gilead. As he passed the stopped truck, Lilly waved him down. When he stopped, Lilly told him the truck had stalled and they needed jumper cables. McAulay replied that he did not have any jumper cables, but he would be glad to give one of the three men a ride to town. Defendant, who had his pistol in his pocket, got into McAulay's car, and he and McAulay drove off.

Lilly and Pemberton drove around for some time after defendant departed. Finally, they returned to N.C. 73 and headed west toward Mt. Gilead. When they arrived in the vicinity of a store owned by one Harris, they saw defendant get out of a blue and white car and come into the center of the road. He waved them down and got into the truck. Defendant gave Lilly and Pemberton thirty-five dollars each and said he had killed McAulay after he asked McAulay for money and he refused to give him any.

About 6:00 p.m. on Wednesday, 24 March 1982, the body of George Thomas McAulay was discovered in his car on a secondary road about three-tenths of a mile south of N.C. 73, near the Little River bridges. He had been shot twice in the head with a .22-caliber weapon at close range. His wallet was gone and some change was found scattered on the ground near his car.

At trial defendant testified on his own behalf and denied any involvement in the crimes.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the state.*

*Donald M. Dawkins for defendant appellant.*

MARTIN, Justice.

Defendant brings forth forty-three questions for review.[1] For clarity, some of them will be grouped together in this opinion

---

1. Attention is called to *Jones v. Barnes*, --- U.S. ---, 77 L.Ed. 2d 987 (1983), in which the Court held that defense counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. As the Court stated, "[a] brief that raises every

when appropriate. For reasons stated below, judgment must be arrested as to the kidnapping charge and the robbery charge, and the death sentence for murder is vacated and replaced with a sentence of life imprisonment.

[1] Defendant alleges that the trial court erred in its rulings on a number of pretrial motions. Defendant first claims that the trial court erred in denying his 12 July 1982 motion to separate and sequester Joseph Lilly and James Pemberton until trial. Lilly and Pemberton were arrested 24 March 1982 and were charged with murder in the first degree, kidnapping, and robbery with a dangerous weapon of George McAulay. On 28 March 1982, Lilly and Pemberton made statements to authorities about the events of 24 March 1982. Sometime in April 1982, they were placed in the same cell in the Richmond County jail, where they remained until trial. On 12 July 1982, defendant moved to separate the two, arguing that their presence together allowed them to collaborate to produce a version of the events of 24 March which would prejudice defendant at trial.

A trial judge has the discretion to exclude and sequester witnesses during the course of trial. N.C. Gen. Stat. § 15A-1225 (1978); *State v. Cross*, 293 N.C. 296, 237 S.E. 2d 734 (1977); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976). Similarly, for good reason and at his discretion, a trial judge may order the separation before trial of witnesses who are in the custody of the state. In the present case, defendant has failed to show that the trial judge abused his discretion in denying defendant's motion. By the time defendant made this motion, 12 July, Pemberton and Lilly had been housed together for many weeks. When moving for their separation, defendant presented no evidence that the two men were collaborating or had collaborated to devise a false account of the events of 24 March. Further, as all parties present at the motion hearing were aware, if Lilly and Pemberton were called to testify at trial, defendant would have the opportunity to cross-examine them to bring out any inconsistencies between

colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,' Davis, *The Argument of an Appeal,* 26 A.B.A. J. 895, 897 (1940)—in a verbal mound made up of strong and weak contentions. See generally, *e.g.* Godbold, *Twenty Pages and Twenty Minutes—Effective Advocacy on Appeal,* 30 Sw. L. J. 801 (1976)." *Id.* at ---, 77 L.Ed. 2d at 994 (footnote omitted).

their trial testimony and the statements they had given 28 March. As Justice Ruffin stated: "The separation of witnesses . . . is not founded on the idea of keeping the witnesses from intercourse with each other. That would be a vain attempt. The expectation is not to prevent the fabrication of false stories, but by separate cross-examination to detect them." *State v. Silver*, 14 N.C. 332, 333 (1832). Defendant's assignment of error is without merit.

[2] Defendant next argues that the trial court erred in granting the state's motion to consolidate for trial the charges of kidnapping, robbery with a dangerous weapon, and murder in the first degree. Defendant argues that the consolidation of the three charges against him hindered his defense at the sentencing phase of his trial because the jury was then able to consider all of the evidence presented at the guilt phase.

N.C.G.S. 15A-926(a) provides that "[t]wo or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." The granting of a motion to consolidate is reviewable only for abuse of discretion. *E.g., State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). If there was no abuse of discretion, the fact that in hindsight the court's ruling adversely affected defendant's defense will not convert the court's ruling into error. *Cf. State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983) (defendant's trial strategy irrelevant to propriety of court's ruling).

In the present case defendant has failed to show that the trial court abused its discretion in granting the state's motion to consolidate. All of the evidence shows that defendant's acts were part of a single scheme or plan to take the victim's money by force. Had the offenses been severed, the murder could have been prosecuted on a theory of felony murder, in which case evidence supporting the charges of kidnapping and armed robbery could have been presented before the jury during that trial. The trial court's decision to consolidate the charges for trial under N.C.G.S. 15A-926(a) was not error. In addition, the trial court did not err in denying defendant's subsequent motion to sever the offenses.

[3] Next, defendant contends that the trial court erred by denying his pretrial motion to exclude the death penalty as a possible sentence on grounds that the so-called "death qualification" of

prospective jurors denied him his right to a fair trial. *See generally Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776 (1968); *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622 (1982); *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622 (1982). Defendant also argues that for this reason the trial court erred in denying his pretrial motion to empanel different juries for the guilt determination phase and the sentencing phase of his trial. Finally, defendant argues that because a sentence to death is cruel and unusual punishment, it should have been excluded from consideration at his trial.

This Court has held consistently that the death qualification of jurors is not error, and for this reason, defendant's assignment of error is overruled. *See, e.g., State v. Hill*, 308 N.C. 382, 302 S.E. 2d 202 (1983); *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983). Defendant's argument that the death penalty is cruel and unusual is also without merit. In *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907 (1980), this Court held that the death penalty is not per se cruel and unusual punishment. *See also, e.g., Gregg v. Georgia*, 428 U.S. 153, 49 L.Ed. 2d 859 (1976); *State v. Kirkley, supra*.

[4] Defendant contends that the trial court erred by denying his pretrial motions for discovery of statements made by state's witnesses James Pemberton and Joseph Lilly to law enforcement officers. Under N.C.G.S. 15A-904(a), the state is not required to give to defendant before trial any statements made by witnesses of the state. If such evidence is material and favorable to the defendant, the state is required to disclose it to defense counsel *at* trial. *State v. Hardy, supra*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *United States v. Agurs*, 427 U.S. 97, 49 L.Ed. 2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215 (1963). In the instant case, the prosecution gave defense counsel the pretrial statements of Pemberton and Lilly at trial, before Lilly and Pemberton took the stand. Standing alone, this satisfies the requirement of due process explained in *Hardy, Agurs*, and *Brady, supra*. However, we also note that the substance of Lilly's and Pemberton's pretrial statements were incorporated into affidavits used to support the state's application for search warrants of defendant's residence. As these warrants were of public record, defendant could have examined them before trial to discover the

substance of Lilly's and Pemberton's statements. Defendant's assignment of error is overruled.

[5]   Defendant next contends that the trial court erred in denying his pretrial motion for sequestration of potential jurors and individual voir dire of prospective jurors. Defendant argues that "[i]ndividual voir dire and sequestration of jurors during voir dire would have eliminated some of the embarrassment caused by jurors sitting in exposure before other potential jurors during jury selection."

N.C.G.S. 15A-1214(j) provides that "[i]n capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." A trial court is not required to permit individual voir dire of jurors in a capital case. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 642 (1982). Whether to allow sequestration and individual voir dire of prospective jurors is a matter for the trial court's discretion, and its ruling will not be reversed absent a showing of abuse of discretion. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). Defendant's argument fails to establish that the trial court abused its discretion in denying his motion. Accordingly, we have determined that the trial court's ruling was not error.

The defendant next argues that the trial court erred in denying his pretrial motion to dismiss all three charges against him. Defendant claims that the indictments for each offense were defective and further, that because the trial judge erred in consolidating the offenses for trial, all indictments should have been quashed. As explained above, the trial court did not err in consolidating for trial the charges against defendant. On that score, defendant's claim of error is without merit. We now consider defendant's argument that the indictments for each offense were defective.

In general, when an indictment charges a crime in plain, intelligible and explicit language in the words of the statute, it is proper. *State v. Norwood*, 289 N.C. 424, 222 S.E. 2d 253 (1976); *State v. Penley*, 277 N.C. 704, 178 S.E. 2d 490 (1971). We have examined each of the indictments and the statutes upon which they are predicated. The indictments are all proper in form and lawful.

The trial court properly denied defendant's motion to quash the indictments.

[6] Defendant next assigns as error the admission into evidence of State's Exhibit 14, a map depicting the rivers and roads in the area in which the crimes occurred. Defendant argues that the exhibit "bolstered and embellished the State's otherwise weak case against him." He also contends that the court's instructions to the jury concerning the map were erroneous and prejudiced his defense.

In North Carolina, if properly authenticated, maps, diagrams, photographs, movies, sketches, and composite pictures are admissible to illustrate a witness's testimony. *State v. Lee*, 293 N.C. 570, 238 S.E. 2d 299 (1977); *State v. Johnson*, 280 N.C. 281, 185 S.E. 2d 698 (1972); *State v. Rogers*, 168 N.C. 112, 83 S.E. 161 (1914). A properly authenticated map need not be drawn to scale to be admissible. *Rogers, supra. See generally* 9 A.L.R. 2d 1044 (1950). In the present case, while on the stand Detective Sergeant Harold Napier of the Richmond County Sheriff's Department identified State's Exhibit 14 as a map of rivers and roads in the general area where the crimes were committed. He testified that the exhibit correctly and accurately displayed the roads and the general area of northwestern Richmond County as they existed on 24 March 1982; that the exhibit was prepared from a Richmond County map; that he did not know whether the exhibit was drawn to scale; and that he could use the map to illustrate his testimony. This testimony provided sufficient foundation to permit the map to be introduced for illustrative purposes. *Cf. Williams v. Bethany Fire Dept.*, 307 N.C. 430, 298 S.E. 2d 352 (1983). The map's probative value outweighed any prejudicial effect it might have had. The trial court did not abuse its discretion in allowing the map into evidence.

Further, before instructing the jury concerning the use it might make of the map, the court conferred with the state and defense counsel, asking each whether they had any objections to the instructions the court proposed to give. Neither side did. As to the map, the court then instructed the jury as follows:

Members of the jury, as you know, photographs were introduced into evidence during the course of the trial and a map or drawing was introduced into evidence during the

course of the trial. These were allowed into evidence for the purpose of illustrating and explaining the testimony of various witnesses who were on the witness stand and testified at the time that they were used. They may not be considered by you for any purpose other than to illustrate and explain the testimony of those witnesses.

These instructions were not error. Defendant's assignment of error is overruled.

[7] Defendant next assigns as error the introduction into evidence of items which were seized from defendant's residence by authority of search warrants issued 28 March 1982 and 4 April 1982. Defendant argues that these search warrants were based upon affidavits which were purely conclusory and which did not adequately state circumstances upon which the affiant's belief of probable cause was founded. *See Nathanson v. United States*, 290 U.S. 41, 78 L.Ed. 159 (1933). Defendant also contends that there was insufficient probable cause to believe that the evidence sought would be found at his residence.

"[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, --- U.S. ---, ---, 76 L.Ed. 2d 527, 547 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 4 L.Ed. 2d 697, 708 (1960)). *See also State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976).

State Bureau of Investigation agent K. R. Snead supported his 28 March 1982 request for a warrant to search defendant's house with the following affidavit:

On Wednesday, March 24, 1982 at about 5:00 P.M. on a rural road in Richmond County George T. McAulay was shot to death. Mr. McAulay was shot two times in the head and was robbed of his wallet and an undetermined amount of money. This applicant further swears that on March 28, 1982 he interviewed James Marion Pemberton and Pemberton told applicant that he, Joseph Lilly and Henry Jackson were in Richmond County on Wednesday 3-24-82 and had planned be-

tween the three of them to rob Mr. George McAulay of his money. Pemberton further said that the three of them flagged down Mr. McAulay on a rural road and that Henry Jackson got into McAulay's vehicle and forced McAulay to drive down a road and robbed him. Pemberton further told applicant that Henry Jackson has told him that he, Jackson, told him on 3-24-82 he robbed McAulay and shot him two times in the face with his, Jackson, 22 cal pistol. Pemberton further told applicant that Jackson told him he robbed McAulay of his money and wallet, and left him in his car. Pemberton said that on 3-24-82 Jackson was wearing a gray or white shirt and blue jeans.

Pemberton said that Jackson was carrying a .22 cal pistol, silver and black in color on 3-24-82.

Applicant further swears that on March 28, 1982, Deputy Harold Napier interviewed Joseph David Lilly and Lilly told him, that he along with Henry Jackson and Pemberton planned to rob George McAulay in Richmond County and that Henry Jackson got into McAulay Continental and went down a rural road and robbed McAulay. Lilly further told Napier that Jackson told him on 3-24-82 he shot McAulay 2 times in the face with his, Jackson's, 22 cal pistol and took his money and wallet. Lilly furthered told Napier that on 3-24-82 that Jackson was wearing a vaze [sic] shirt and blue jeans.

An informant's " 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report [and] . . . should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates, supra,* --- U.S. at ---, 76 L.Ed. 2d at 543. "[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Id.* at ---, 76 L.Ed. 2d at 545. Moreover, an affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substan-

tial basis for crediting the hearsay is presented." *Jones v. United States, supra,* 362 U.S. 257, 269, 4 L.Ed. 2d 697, 707 (1960).

In the present case, Agent Snead's application for a search warrant was based on the information provided to him on 28 March 1982 by Pemberton and by Deputy Napier's account of statements given to him by Lilly on 28 March 1982. The accounts of Lilly and Pemberton were based on firsthand knowledge, were given four days after the commission of the crimes, and were consistent with one another. We hold that under the totality of the circumstances, there was sufficient probable cause to believe that evidence of the crimes would be found at the residence of defendant. The issuance of the 28 March 1982 warrant to search defendant's house was not error. Therefore, the trial court did not err in admitting into evidence items seized as a result of the search conducted pursuant to the 28 March warrant. *See State v. Jones, supra,* 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Riddick, supra,* 291 N.C. 399, 230 S.E. 2d 506 (1976).

On 4 April 1982 Agent Snead applied for a second warrant to search defendant's house for .22-caliber projectiles. Supporting his application was an affidavit which stated the following:

> On March 24, 1982, Wednesday that George Thomas McAulay was shot to death at about five o'clock pm. McAulay was shot with a 22 caliber weapon in the head, was robbed of his wallet and an undetermined amount of money. Applicant further swears that on March 28, 1982 he interviewed Joseph Lilly and Lilly told applicant that he, Lilly, James Pemberton and Henry Louis Jackson had made plans to and did rob George McAulay in Richmond County at about 5:00 PM on 3-24-82. Lilly furthered applicant that Henry Louis Jackson has told him he, Jackson, did shoot McAulay, in the face two times with his, Jackson, silver with black handles 22 caliber pistol, revolver. Lilly told applicant that he has seen Henry Jackson's 22 caliber pistol and it is fact silver in color with black handles. Applicant swears that on March 28, 1982 he interviewed James Marion Pemberton and James Marion Pemberton told applicant that he was also involved in the robbery of George McAulay on 3-24-82 along with Lilly and Henry Louis Jackson. Pemberton furthered told applicant that Jackson told him he shot McAulay two times in the face with his, Jackson, 22 caliber pistol silver with black handles.

Pemberton furthered told applicant that he has personally seen Henry Louis Jackson's 22 pistol and it is in fact silver in color with black handles.

Applicant swears that he talked with Reggie Patterson on 4-1-82 and Patterson told him he was a friend of Henry Louis Jackson. Patterson told applicant that he has had in his possession Jacksons 22 caliber pistol about 30 days ago and that the pistol is silver in color and has black handles. Patterson stated that he returned Jackson's pistol to Jackson on the same day he had it. Patterson told applicant that on Wednesday he was not involved in the robbery of Mr. McAulay. Patterson told applicant that he was at Henry Jackson's house on Tuesday 3-23-82 and that Jackson shot his silver with black handles 22 caliber pistol in the ground in his Jackson's front yard. Patterson told applicant that he saw Jackson shot the pistol at about 5:00 PM on that day.

We hold that under the totality of the circumstances, on 4 April 1982 there was probable cause to believe that .22-caliber projectiles might be found at defendant's residence. Thus, the search warrant was valid, and the trial court did not err in admitting into evidence casings which were found at defendant's residence. *See State v. Jones, supra; State v. Riddick, supra.*

Defendant next contends that the trial court erred in denying his motions for severance of the offenses, made at the close of the state's evidence and at the close of all of the evidence. As explained above, defendant's pretrial motion for severance was denied. N.C.G.S. 15A-927(a)(1) provides in part that if a defendant's pretrial motion for severance is overruled, he may renew the motion before or at the close of all of the evidence if based on a ground not previously known. Motions of this type are addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal unless defendant shows an abuse of discretion which deprived defendant of a fair trial. *See State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977).

At the conclusion of the state's case, the evidence introduced showed that the events giving rise to the crime were as predicted by the parties before trial. This evidence showed a connected series of events supporting all three charges; in fact, these events were so interwoven that if the charges had been severed, evi-

dence of the other crimes charged would have been admissible at each trial. No new basis for the motions made during trial was presented. Consolidation of the three charges in no way prevented defendant from presenting his defense nor otherwise prevented him from receiving a fair trial. Defendant's assignments of error are overruled.

[8] Defendant next assigns as error the trial court's denial of his motions to dismiss the kidnapping charge at the close of all of the evidence and after the jury's verdict of guilty was returned. He further assigns as error the denial of his motion for appropriate relief after judgment was entered on the kidnapping charge. *See* N.C. Gen. Stat. § 15A-1227 (1978). Defendant contends that there was insufficient evidence as a matter of law to support entry of a judgment of guilt.

Upon defendant's motion for dismissal, the question for the trial court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) that defendant was the perpetrator of the offense. *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983). If there is such substantial evidence, the motion must be denied. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). However, if the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the perpetrator, the motion should be allowed. *Id.* In considering a motion to dismiss, the evidence must be considered in the light most favorable to the state, and the state is entitled to every reasonable inference to be drawn therefrom. *Id.*

The state's evidence tends to show that defendant entered Mr. McAulay's automobile on the pretext of getting a ride to town in order to obtain jumper cables for Lilly's truck. In fact, defendant entered the automobile for the purpose of robbing Mr. McAulay. Under a case arising under the predecessor statute of N.C.G.S. 14-39, this court stated that "where false and fraudulent representations or fraud amounting substantially to a coercion of the will of the kidnapped person are used as a substitute for force in effecting kidnapping, there is, in truth and in law, no consent at all on the part of the victim." *State v. Gough*, 257 N.C. 348, 356, 126 S.E. 2d 118, 124 (1962). In the present case the state argues that because defendant misrepresented his intent to McAulay

upon entering the car, this fraud resulted in McAulay's not consenting to drive defendant anywhere. Therefore, defendant must have unlawfully confined, restrained, or removed him. We cannot, on these facts, agree.

There is no evidence allowing more than mere conjecture that defendant used his misrepresentation to confine, restrain or remove Mr. McAulay against his will during their ride together. Mr. McAulay was the driver of the car at all times. Defendant is blind in one eye and has vision of only 12 over 400 in the other eye. For all we know, defendant may have kept his intent to rob McAulay to himself until the car stopped where McAulay's body was found. All the evidence shows is that defendant entered McAulay's automobile and that McAulay was later found in his car, which was three-tenths of a mile off N.C. highway 73. Without more, this would permit an inference that, for his own reasons, McAulay drove to the place where he was shot and that it was then and there that defendant first revealed his intent to rob Mr. McAulay. By this account of events, defendant would have restrained McAulay for the first time only after the car had stopped. In this situation, such restraint would have been an inherent, inevitable feature of the armed robbery, and thus judgment for kidnapping could not be entered based on this restraint. *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978). Because of the total lack of evidence regarding the events occurring between the time defendant entered McAulay's automobile and the time McAulay was shot, we must rule that the state has failed to prove beyond a reasonable doubt that defendant restrained, confined, or removed Mr. McAulay within the meaning of N.C.G.S. 14-39 during that period. Accordingly, the judgment and sentence for the kidnapping charge must be arrested.

[9]  Defendant next argues that the trial court erred in denying his motion to dismiss the armed robbery charge (1) at the close of all of the evidence and (2) after the jury verdict was returned and before entry of judgment. The criteria for granting a motion to dismiss are set forth above. In this case, the evidence most favorable to the state showed that defendant thought McAulay had one or two thousand dollars on him; that defendant entered Mr. McAulay's automobile with a .22 caliber pistol concealed on his person; that within hours of entering McAulay's vehicle defendant told Pemberton and Lilly that he had to kill McAulay be-

cause he didn't give him any money; that defendant, who had no money before his encounter with the victim, gave Lilly and Pemberton cash shortly after leaving McAulay, keeping some for himself; and that Mr. McAulay's body was found the day of the crimes, shot through the head twice, with his wallet missing. We hold that the trial court did not err in denying defendant's motions to dismiss the charge of robbery with a dangerous weapon.

[10] Defendant next contends that the trial court erred in denying his motions to dismiss the charge of murder in the first degree, which motions were made at the close of all of the evidence and after jury verdict but before entry of judgment. *See* N.C. Gen. Stat. § 15A-1227 (1978); N.C. Gen. Stat. § 14-17 (1981).

Again, the evidence in the present case shows that defendant, armed with a .22-caliber pistol, entered McAulay's car with the intent to rob him. McAulay was found dead, his wallet missing, three-tenths of a mile from N.C. highway 73. Shortly after leaving McAulay, defendant told Lilly and Pemberton that he had killed McAulay, and defendant gave the two some cash. Although no one saw defendant shoot McAulay, it is a reasonable inference from this evidence that defendant was the perpetrator of the homicide. Because the killing was committed in the perpetration of robbery with a dangerous weapon, the crime was murder in the first degree. N.C. Gen. Stat. § 14-17 (1981). The trial court did not err in denying defendant's motions to dismiss the charge of murder in the first degree.

Defendant next argues that the trial court erred in denying his motion for a new trial on all charges. N.C. Gen. Stat. § 15A-1411 (1978); N.C. Gen. Stat. § 15A-1417(a)(1) (1978). N.C.G.S. 15A-1420(c)(6) provides that "[a] defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief. Relief must be denied unless prejudice appears, in accordance with G.S. 15A-1443." When defendant made his motion for a new trial, he did not state any grounds for supporting it. Defendant's argument before this court that the trial court erred in denying this motion is set forth in its entirety as follows: "For Assignments of Error heretofore made, defendant would argue that there was not sufficient evidence to warrant denial of this motion."

We ruled above that the only error committed by the trial court prior to entry of judgment for the three charges was its failure to grant defendant's motion to dismiss the kidnapping charge. Defendant has failed to demonstrate how this error so prejudiced his trial that a retrial on the other charges must be ordered. N.C. Gen. Stat. § 15A-1443 (1978). The trial court did not err in denying defendant's motion for a new trial.

[11] Defendant next argues that the trial court should have granted his post-trial motion for appropriate relief on grounds that the court erroneously entered judgment on his armed robbery conviction. Defendant was convicted of the charge of murder in the first degree based on a theory of felony murder, with the armed robbery constituting the underlying felony. The trial court sentenced defendant to fourteen years' imprisonment for the robbery. Defendant argues that the entry of judgment and sentence for armed robbery must be arrested because the armed robbery was merged with his conviction of murder in the first degree. Defendant's argument has merit. "When a defendant is convicted of first degree murder pursuant to the felony murder rule, and a verdict of guilty is also returned on the underlying felony, this latter conviction . . . merges into the murder conviction, and any judgment imposed on the underlying felony must be arrested." *State v. Silhan,* 302 N.C. 223, 261-62, 275 S.E. 2d 450, 477 (1981). *See also, e.g., State v. Squire,* 292 N.C. 494, 234 S.E. 2d 563, *cert. denied,* 434 U.S. 998 (1977); *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972). Judgment entered for defendant's conviction of armed robbery is arrested, and sentence for it is vacated.

[12] Next, defendant argues that the trial court erred when instructing the jury during the sentencing proceedings conducted for his conviction of murder in the first degree. *See* N.C. Gen. Stat. § 15A-2000(a) (Cum. Supp. 1981). Defendant claims that the trial judge erred when he instructed the jury that it would be required to consider the evidence offered during the guilt or innocence phase of the trial. Defendant argues that by telling the jury that it would have to consider the evidence presented during the guilt/innocence phase of the trial, the trial court was allowing the jury to find that the robbery charge was an aggravating circumstance. Defendant was convicted of murder in the first degree based on felony murder, with armed robbery constituting the underlying felony. We have ruled that it is error to submit the

underlying felony as an aggravating circumstance during the sentencing phase of the trial for a capital crime when felony murder is the theory under which defendant was convicted. *State v. Silhan, supra,* 302 N.C. 223, 275 S.E. 2d 450 (1981); *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied,* 446 U.S. 941 (1980).

During the sentencing hearing in the present case, no additional evidence was offered by either the state or defendant. After summarizing some of the evidence for the jury, the trial court instructed as required by N.C.G.S. 15A-2000(b). The only aggravating circumstance submitted to the jury was whether the circumstance listed in N.C.G.S. 15A-2000(e)(6) existed: "The capital felony was committed for pecuniary gain." The mitigating circumstances submitted were:

(1) Henry Jackson has no significant history of prior criminal activity.

(2) Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

The jury was not instructed to determine whether the murder was committed while defendant was engaged in robbing the victim. *See* N.C. Gen. Stat. § 15A-2000(e)(5) (Cum. Supp. 1981).

The trial court did not commit error in instructing the jury during the sentencing phase of defendant's trial. No new evidence was submitted during this proceeding. Therefore, the only evidence the jury could possibly consider was that presented during the guilt phase of the trial. The instructions did not suggest that the armed robbery could be considered an aggravating circumstance; this aggravating circumstance was not even submitted to the jury for a finding.[2] Defendant's assignment of error is without merit.

---

2. The submission of the pecuniary gain aggravating circumstance, N.C.G.S. 15A-2000(e)(6) is not error when defendant's conviction was based on felony murder with armed robbery the underlying felony. *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981).

[13] We now turn to the review required of this Court by N.C.G.S. 15A-2000(d)(2).[3] We must determine whether "the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, or [whether] the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." After careful and thorough review, we have determined that the record reveals that the jury did not impose the death sentence under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the aggravating circumstance found by the jury. Thus, we now turn to what has become known as a "proportionality review." *See generally Solem v. Helm,* --- U.S. ---, 77 L.Ed. 2d 637 (1983).

In *State v. Williams,* 308 N.C. 47, 301 S.E. 2d 335 (1983), we set forth the class of cases to which the imposition of a death sentence in a given case will be compared as

> *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*Id.* at 79, 301 S.E. 2d at 355. We take this opportunity to clarify that this class includes only those cases which have been affirmed by this Court. As we stated in *State v. Goodman,* 298 N.C. 1, 35, 257 S.E. 2d 569, 591 (1979), a proportionality review is to be undertaken "only in cases where both phases of the trial of a defendant have been found to be without error. Only then can we have before us the true decision of the jury to which we feel great deference should be accorded." It would be incongruous for us to compare the facts of the present case with those of cases in which prejudicial error has been found. In *Williams, supra,* we also stated that:

> [T]his Court will not necessarily feel bound during its proportionality review to give a citation to every case in the pool of

---

3. It is noted that upon the verdict returned the trial judge had no alternative to imposing the death sentence. The trial judge does not conduct a proportionality review of the sentence. That duty is reserved exclusively for this Court.

"similar cases" used for comparison. We have chosen to use *all* of these "similar cases" for proportionality review purposes. The Bar may safely assume that we are aware of our own opinions filed in capital cases arising since the effective date of our capital punishment statute, 1 June 1977.

308 N.C. at 81-82, 301 S.E. 2d at 356.

The purpose of proportionality review is to serve as a check against the capricious or random imposition of the death penalty. *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981). We repeat that we consider the responsibility placed upon us by N.C.G.S. 15A-2000(d)(2) to be as serious as any responsibility placed upon an appellate court. *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied*, 455 U.S. 1038 (1982). In carrying out our duties under the statute, we must be sensitive not only to the mandate of our legislature but also to the constitutional dimensions of our review. *Id.* We have, therefore, carefully reviewed the record, briefs, and oral arguments presented.

There are now approximately fifty-one life sentence cases and thirteen death sentence cases in the proportionality review pool. After reviewing the facts in these cases, we find that although the killing of McAulay was a senseless, wanton murder, it does not rise to the level of those murders in which we have approved the death sentence upon proportionality review. *E.g., State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983); *State v. Pinch, supra*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622 (1982); *State v. Rook, supra; State v. Barfield, supra*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907 (1980). A primary reason for this result is that there is no evidence of what occurred after defendant left with McAulay. The crime was heinous, but there is no evidence to show that it was "especially heinous" within the meaning of the statute. *See State v. Hamlette*, 302 N.C. 490, 276 S.E. 2d 338 (1981). Murder for pecuniary gain is an outrageous crime; however, when this case is compared with the cases in the proportionality pool, we cannot hold that this death sentence is not disproportionate.

We, therefore, hold as a matter of law that the death sentence imposed in this case is disproportionate within the meaning of N.C.G.S. 15A-2000(d)(2). Upon this holding, the statute requires that this Court sentence defendant to life imprisonment

in lieu of the death sentence. The language of the statute is mandatory. This Court has no discretion in determining whether a death sentence should be vacated. The death sentence is vacated and defendant is hereby sentenced to imprisonment in the state's prison for the remainder of his natural life. The defendant is entitled to credit for days spent in confinement prior to the date of this judgment. The Clerk of the Superior Court of Union County shall issue a commitment accordingly.

No. 82CRS5199 — first degree kidnapping — jugment arrested.

No. 82CRS5201 — robbery with a firearm — judgment arrested.

No. 82CRS5200 — murder in the first degree — no error in guilt phase; death sentence vacated and sentence of life imprisonment imposed.