STATE OF NORTH CAROLINA v. EDDIE CARSON ROBINSON

No. 261A92

(Filed 30 December 1994)

### 1. Jury § 142 (NCI4th)— capital sentencing—voir dire examination—previous first-degree murder conviction—consideration of life sentence—attempt to "stake out" jurors

The trial court did not err by refusing to permit defendant to ask two of the jurors who sat on his jury in a capital sentencing proceeding for three murders whether they could follow the court's instructions and weigh the aggravating and mitigating circumstances and consider life imprisonment as a sentencing option if they were to find that defendant had a previous first-degree murder conviction since the question was an improper attempt to "stake out" the jurors as to their answers to legal questions before they were informed of legal principles applicable to their sentencing recommendation. Assuming that the question was a proper inquiry as to whether the jurors could follow the law, defendant failed to show that he was prejudiced by the court's ruling since the fact that the jury was not automatically disposed to return a death sentence because defendant had a prior, unrelated first-degree murder conviction was shown by its recommendation of a life sentence for one of the murders for which defendant was being sentenced, and since defendant could have requested to reopen questioning of these two jurors when the trial court reconsidered the previous ruling and permitted defense counsel to pose this question to the remaining potential jurors.

**Am Jur 2d, Jury § 197.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

**Propriety, on voir dire in criminal case, of inquiries as to juror's possible prejudice if informed of defendant's prior convictions. 43 ALR3d 1081.**

### 2. Criminal Law § 1363 (NCI4th)— capital sentencing—voluntary confession—mitigating value—finding as to one victim but not others

The jury in a capital sentencing proceeding for three murders did not arbitrarily refuse to consider established mitigating evi-

dence when it found that the nonstatutory mitigating circumstance that defendant voluntarily confessed to the crimes without counsel had mitigating value in the murder of the male victim but not in the murders of the two female victims where it is a reasonable conclusion that one or more jurors found defendant's confession to have mitigating value in the murder of the male victim because defendant stated that his companion murdered this victim and the physical evidence supported defendant's statement, and it is an equally reasonable conclusion that a juror or jurors found defendant's statement concerning the murders of the female victims to lack mitigating value since defendant was not truthful as to who actually killed the female victims.

**Am Jur 2d, Criminal Law §§ 598, 599.**

3. **Criminal Law § 1316 (NCI4th); Evidence and Witnesses § 897 (NCI4th)— capital sentencing—prior conviction— search warrant and affidavit**

The State's inadvertent introduction of a search warrant and its supporting affidavit, along with the judgment documents pertaining to defendant's 1969 murder conviction in Colorado, in defendant's capital sentencing proceeding did not violate defendant's right of confrontation since the warrant and affidavit related to a prior conviction and not the conviction for which defendant was being sentenced; the warrant and affidavit were not admitted during the guilt-innocence phase of the trial; and the warrant and affidavit were admissible during the sentencing proceeding to prove the circumstances of the prior felony conviction. Assuming *arguendo* that the introduction of these documents violated defendant's right of confrontation, this error was harmless beyond a reasonable doubt where (1) defendant does not dispute the Colorado conviction for first-degree murder; (2) although the affidavit contains a statement by the victim's daughter, the prosecutor's closing argument that there are children in the world today who are motherless because of defendant readily applies to the motherless child resulting from these three murders; and (3) substantially equivalent evidence was brought out during the cross-examination of defendant's mental health expert.

**Am Jur 2d, Criminal Law §§ 598, 599; Evidence § 662.**

STATE v. ROBINSON

[339 N.C. 263 (1994)]

**4. Jury § 141 (NCI4th)— capital sentencing—jury voir dire— parole eligibility—questions properly excluded**

The trial court properly denied defendant's motion to permit questioning of prospective jurors in a capital sentencing proceeding regarding parole eligibility where defendant would be eligible for parole if he received a life sentence.

**Am Jur 2d, Jury § 197.**

**5. Criminal Law § 1325 (NCI4th)— capital sentencing—mitigating circumstances—instructions—use of "may"**

The trial court's use of the word "may" in issues three and four in a capital sentencing proceeding did not permit each juror, in his or her discretion, to decide whether to consider in mitigation evidence which that juror had already found to exist in issue two.

**Am Jur 2d, Trial §§ 1441 et seq.**

**6. Criminal Law § 461 (NCI4th)— capital sentencing—jury argument not supported by evidence**

The trial court properly sustained the prosecutor's objection to defense counsel's closing argument in a capital sentencing proceeding that capital defendants usually put their mothers on the stand during the sentencing proceeding since there was no evidence before the jury to support this assertion.

**Am Jur 2d, Trial §§ 609 et seq.**

**7. Criminal Law § 454 (NCI4th)— capital sentencing— improper argument urging life sentence**

The trial court properly sustained the prosecutor's objection to defense counsel's closing argument in a capital sentencing proceeding asking the jurors to disregard the facts, "speak from [their] heart(s)," and find "some reason on earth" to recommend a life sentence rather than the death penalty because this argument improperly urges the jurors to base their decision on reasons not based on the mitigating and aggravating evidence presented at the sentencing proceeding.

**Am Jur 2d, Trial §§ 572 et seq.**

**8. Criminal Law § 1373 (NCI4th)— death sentences not disproportionate**

Sentences of death imposed upon defendant for two first-degree murders were not excessive and disproportionate to the

penalty imposed in similar cases, considering both the crimes and the defendant, where defendant was convicted of the premeditated and deliberate murders of three members of one family but received a life sentence for one murder; the jury found the prior violent felony, avoidance of arrest and course of conduct aggravating circumstances; defendant and his accomplice coldly calculated plans of attack on the victims; defendant abandoned a helpless one-year-old child in a flooded automobile with the body of her mother; the four-year-old victim suffered fear and physical pain as she was rudely awakened, placed in a car with a stranger, driven to a field, and repeatedly hit with a pipe until losing consciousness; defendant's motive for committing the second and third murders was to avoid apprehension for the first murder, which was committed for financial gain; and defendant had a prior conviction for first-degree murder.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Consitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing two sentences of death and one sentence of life imprisonment entered by Britt, J., at the 4 May 1992 Criminal Session of Superior Court, Sampson County, upon jury verdicts finding defendant guilty of three counts of first-degree murder. Execution was stayed by this Court pending defendant's appeal. Heard in the Supreme Court 6 December 1993.

*Michael F. Easley, Attorney General, by G. Patrick Murphy, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was charged in indictments, proper in form, with three counts of first-degree murder. The case initially was tried capitally at the 15 October 1984 Criminal Session of Superior Court, Bladen County, before Judge Hamilton H. Hobgood, and defendant was found guilty as charged on all counts. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended the death

penalty for all three murders. On appeal, this Court found no error in the guilt-innocence phase of the trial but granted defendant a new capital sentencing proceeding based on the ruling of the United States Supreme Court in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *State v. Robinson*, 327 N.C. 346, 395 S.E.2d 402 (1990).

Judge Joe Freeman Britt granted defendant's motion for change of venue to Sampson County and presided at the new capital sentencing proceeding. Upon the recommendation of the jury, defendant was sentenced to death for the murders of Shelia Denise Worley and Psoma Wine Baggett and to life imprisonment for the murder of James Elwell Worley. Defendant again appeals as of right to this Court. For the reasons discussed herein, we conclude that defendant's second sentencing proceeding was free from prejudicial error.

Briefly, the evidence adduced at the sentencing proceeding tended to show the following. On 26 March 1984 at approximately 2:00 a.m., Dan Alford, a volunteer firefighter who lived in the White's Creek Community of Bladen County, noticed a fire down the highway from his residence. Upon investigation, he found that the interior of a small car, which was parked on the right shoulder of the highway, was in flames. Alford left and immediately returned with a fire truck and another volunteer. After the two men extinguished the flames, they found a badly burned body in the passenger area of the car. The resulting autopsy, conducted at the Office of the Medical Examiner in Chapel Hill, revealed that James Worley had been shot twice in the left chest and was dead at the time of the fire. Forensic testing later established that clothing scraps found in the car contained gasoline.

Early on the morning of 30 April 1984, Kent Allen, while driving towards White's Creek in the Lisban Community, noticed an automobile sitting off the road at the bridge with the rear end of the car on the creek bank and the front tires in the water. Allen found a woman's body floating faceup in the creek beside the car and a small child in diapers standing in the front seat of the car looking at the body and crying for her mother. After law enforcement officers arrived at the scene, the body of a young girl was found floating in the creek downstream from the vehicle. Autopsies were conducted at the Chief Medical Examiner's office in Chapel Hill, and each autopsy indicated death by drowning secondary to blunt trauma of the head.

Following the arrest of Elton McLaughlin, authorities arrested defendant on 9 May 1984. On 10 May 1984, defendant, after waiving

his *Miranda* rights, gave a statement describing the murder of James Worley. Defendant indicated he first met McLaughlin in March of 1984 in a pool hall in Elizabethtown, North Carolina. McLaughlin told defendant he had been hired by a woman to kill her husband and needed defendant to assist him. McLaughlin later told defendant he would receive between fifteen hundred and three thousand dollars for his participation in the murder.

The two men first attempted to kill James Worley on the Sunday after they met. McLaughlin had a .22 rifle, a plastic jug of gasoline, and a metal pipe. He told defendant the gasoline was to set Worley's car on fire. After driving to Worley's residence in New Town, they parked on a dirt road and walked towards the house. The plan was aborted when an automobile pulled up across the street from Worley's house and the driver sat in the car for several minutes with the lights on. The next Sunday night, the two again drove to Worley's home but did not stop because McLaughlin decided that something was wrong. The following Saturday, the two men met at McLaughlin's trailer and discussed a revised plan. McLaughlin told defendant he had spoken with the victim's wife and that she would leave the back door of the house open the next evening. On Sunday, 26 March 1984, McLaughlin and defendant drove to Worley's home at approximately 11:30 p.m. After parking along the dirt road, they walked towards the house and entered through the back door. Upon locating the bedroom, McLaughlin fired two shots into Worley's chest; he tried to fire again but the rifle jammed. The victim's wife got out of bed and waited in the hallway while McLaughlin and defendant removed the body and placed it in the passenger side of Worley's Volkswagen. Following McLaughlin, defendant drove the Volkswagen to the Lisban area where they doused the vehicle with gasoline and ignited it.

Defendant also described the events leading up to and including the murders of Denise Worley and Psoma Baggett. Defendant stated that late in April 1984, McLaughlin told him the victim's wife had been talking to the authorities and that they needed to kill her. After initially telling the officers that Denise Worley was already dead when he arrived at McLaughlin's trailer on 29 April 1984, defendant admitted he actually hid in a bedroom of the trailer and waited for Denise Worley to arrive at McLaughlin's trailer. At some point, McLaughlin showed defendant a metal pipe and told him that, once the lights were turned out, defendant was to kill Denise using the pipe. When the lights went out, defendant found McLaughlin and Denise standing in the hallway kissing. Defendant hit her twice in the back of the head

with the pipe and then dragged her to the bathroom where he held her head underwater in the bathtub for five to ten minutes. After cleaning up the blood, the two men placed the body in the trunk of her own car. They awakened her two children, Alicia and Psoma, who were asleep in the living room, and drove to a field approximately a half mile from White's Creek bridge. Having decided to kill Psoma because she was old enough to identify them, McLaughlin struck the child twice from behind with a pipe and then placed her body in the front seat of her mother's car. They moved Denise's body from the trunk and placed it beside Psoma. Psoma's feet continued to move so McLaughlin handed defendant the pipe and instructed him to hit her yet a third time. The baby Alicia, was placed unharmed in the car with the bodies of her mother and sister. Defendant then drove the automobile to the edge of the embankment near the bridge and let it roll into the creek. Defendant pulled Denise Worley's body out of the car and threw Psoma out of the car into the water.

The State presented the physical evidence and then rested its case after introducing State's Exhibit No. 42, a certified copy of the judgment entered in Colorado on 28 October 1969 wherein defendant was sentenced to life imprisonment upon his plea of guilty to the charge of first-degree murder.[1]

On defendant's behalf, Dr. Patricio Lara, a psychiatrist at Dorothea Dix, testified he had examined defendant in 1984 pursuant to a court order. Relying on several personal interviews, a previous psychiatric report compiled in Colorado, medical records, school records, and psychological tests, Dr. Lara testified defendant had the equivalent of a seventh grade education and an IQ of 82, which is in the low average or dull normal range of intelligence. When defendant was two years old, his mother left him in the care of relatives; he never knew his father. Dr. Lara noted that the psychological effect of separating a young child from its mother at such a young age is particularly damaging. Testing revealed that defendant suffered from a personality disorder characterized by aggressive action. Generally, personality disorders may be described as persistent maladaptive patterns of behavior substantially affecting the way the individual deals with stress and interacts with other people.

Detective Little testified that defendant had been very cooperative with investigating authorities and that he was not given a deal for

---

1. The transcript initially reflects that the document the prosecutor tendered was State's Exhibit No. 41. However, when the court admitted the document, it was identified as State's Exhibit No. 42.

testifying in the murder trial of Elton McLaughlin. The parties stipulated that defendant testified truthfully on behalf of the State in McLaughlin's prosecution.

With respect to the murders of Denise Worley and Psoma Baggett, three aggravating circumstances were submitted to the jury: (i) defendant was previously convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) the murder was committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4); and (iii) the murder was part of a course of conduct in which defendant engaged and which included the commission of other crimes of violence against other persons, N.C.G.S. § 15A-2000(e)(11). The jury found the existence of all three circumstances in these two murders.

Six statutory mitigating circumstances were submitted with respect to the murders of Denise Worley and Psoma Baggett. The jury found two: (i) the murder was committed while defendant was under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2), and (ii) defendant testified truthfully on behalf of the prosecution in another prosecution of a felony, N.C.G.S. § 15A-2000(f)(8). Of the nine nonstatutory mitigating circumstances submitted, the jury found only one to have mitigating value, that defendant's low IQ was in the borderline mentally retarded range of intelligence.

Pursuant to N.C.G.S. § 15A-2000(b)(2), the jury determined that the mitigating circumstances found were insufficient to outweigh the aggravating circumstances found and recommended that defendant be sentenced to death for the murders of Denise Worley and Psoma Baggett.

In the murder of James Worley, two aggravating circumstances were submitted to the jury: (i) defendant had previously been convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3), and (ii) the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). The jury found the existence of both circumstances.

Of the six statutory mitigating circumstances submitted, the jury found four: (i) the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (ii) the murder was actually committed by Elton McLaughlin and defendant was only an accomplice in the murder and

his participation was relatively minor, N.C.G.S. § 15A-2000(f)(4); (iii) defendant acted under the domination of another person, N.C.G.S. § 15A-2000(f)(5); and (iv) defendant testified truthfully on behalf of the prosecution in another prosecution of a felony, N.C.G.S. § 15A-2000(f)(8).

Nine nonstatutory mitigating circumstances were also submitted. Of these, the jury found only two to have mitigating value: (i) defendant voluntarily confessed to the crimes without asking for or without the assistance of counsel and (ii) defendant's low IQ placed him in the borderline range of mental retardation. In this case, the jury found that the mitigating circumstances found were sufficient to outweigh the aggravating circumstances found and recommended that defendant be sentenced to life imprisonment for the murder of James Worley.

## I. Sentencing Issues

[1] In his first assignment of error, defendant contends the trial court abused its discretion during *voir dire* by not allowing him to ask seven prospective jurors whether or not they could follow the law as instructed by the court knowing that defendant had a prior conviction for first-degree murder. After a careful reviewing of the transcript of the *voir dire*, we find this assignment to be without merit.

During *voir dire,* after the prosecutor passed the first group of twelve jurors to the defendant, defendant asked the first juror

[c]onsidering the facts that we have discussed again that the defendant has previously been convicted of three counts of first[-]degree murder and that one of those victims is a very young child, if it were to appear from the evidence presented in this sentencing hearing that the defendant had a previous murder conviction besides the ones that the three [sic], that we are talking about here, would you be able under that circumstance to follow the instructions of the Court and weigh the aggravating and mitigating circumstances and consider life imprisonment as a sentencing option?

The State objected to this question, but the objection was overruled. Over the State's objection, defendant was allowed to ask four other jurors this same question. The fifth juror asked this question was successfully challenged for cause.

Defendant then asked the remaining seven jurors (from the first group passed) as a group if

[c]onsidering the facts that we have discussed and that is that Mr. Robinson has previously been convicted of three first[-]degree murders, one of which was a small child, if you were to also find during the sentencing hearing that the defendant had a previous first[-]degree murder conviction prior to the murders for which he is being sentenced this week, could you still follow the Court's instructions and weigh the aggravating and mitigating circumstances and consider life imprisonment as a sentencing option.

The court sustained the State's objection to this question, but allowed defendant to ask the general question if the witnesses could listen to the instructions of the Court and render a fair and impartial verdict. Later in *voir dire*, defense counsel was allowed to ask, over the State's objection:

Considering what the judge has told you and I have told you the facts, that is, that this is a sentencing hearing because the defendant has been convicted of killing three people one of those was a child, if you were to also find out during this sentencing hearing that the defendant had a previous first[-]degree murder conviction other than the ones we're here for this week, could you still follow the judge's instructions? Could you still weigh the aggravating and mitigating circumstances and could you still consider life imprisonment as a sentencing option?

Defendant was allowed to ask every other potential juror this question. The State continued to object to this particular question, but the Court continued to overrule the objection. Two of the seven jurors who were not given the opportunity to answer defendant's question regarding the effect of a previous first-degree murder conviction sat on defendant's jury.

Defendant argues that the trial court erred when it did not permit defendant to ask two of the jurors who sat on his jury, if they could follow the law if defendant had been previously convicted of an additional first-degree murder. Defendant argues this error requires that he receive a new sentencing proceeding.

Defendant was properly allowed to ask each prospective juror if he or she would automatically vote for death based solely upon one or more convictions of first-degree murder. *See Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492 (1992). However, defense counsel's

own stated purpose for the question at issue here was to determine if, under a given set of facts, a prospective juror would automatically vote against a life sentence. During a *voir dire* hearing after defendant attempted to ask the first group of seven jurors the question noted above, defense counsel stated:

> I believe that we should know in advance that it, if under these facts and circumstances a juror would automatically be precluded from giving life or would automatically return a penalty of death.

Based on this argument, the court did not allow defendant to ask the question. We find the question to be an improper attempt to "stake out" the jurors as to their answers to legal questions before they are informed of legal principles applicable to their sentencing recommendation.

"Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. . . . Jurors should not be asked what kind of verdict they would render under certain named circumstances." *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980). *See also State v. Yelverton*, 334 N.C. 532, 434 S.E.2d 183 (1993). The question posed here does not amount to a proper inquiry as to whether the juror could follow the law as instructed by the trial judge. *See State v. Skipper*, 337 N.C. 1, 23, 446 S.E.2d 252, 263-64 (1994) (example of permissible inquiry as to whether a juror could follow the law and consider both death and life imprisonment). Rather, the question is an attempt to determine whether or not a juror will be unable to consider a life sentence once he or she learns that defendant had been convicted of a prior murder. The fact that the court allowed the question to be asked of some potential jurors, but not others, does not alter our decision.

Moreover, assuming *arguendo* that the question as posed was a proper inquiry as to whether the jurors could follow the law, defendant has still failed to show how he was prejudiced by the ruling. Defendant was convicted of first-degree murder in each of the three deaths; however, defendant received a life sentence in the murder of James Worley. Manifestly, the jury was not automatically disposed to return a death sentence where the defendant had a prior, unrelated, first-degree murder conviction. Furthermore, when the trial court reconsidered its previous ruling and allowed defense counsel to pose the question to the remaining potential jurors, defendant could have

requested to reopen the questioning of the two jurors who had been seated without the opportunity to be asked the question. We find this assignment of error to be without merit.

[2] Defendant next contends he is entitled to a new capital sentencing proceeding because a juror or jurors arbitrarily refused to consider established mitigating evidence. We also find this assignment of error to be without merit.

After his arrest on 9 May 1984, defendant, who was advised of his rights and did not request assistance of counsel, cooperated with his arresting officers and gave two statements concerning the three murders. As a nonstatutory mitigating circumstance in each case, the trial court submitted to the jury that "[t]he defendant voluntarily confessed to the crimes without asking for or without the assistance of counsel." The jury found the circumstance to have mitigating value in the murder of James Worley but not in the murders of the two female victims. Defendant contends there is no basis to show that defendant's confession had mitigating value in only one offense because the mitigating value of the circumstance is based on defendant's conduct after arrest, not during the commission of the crimes.

In *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), the United States Supreme Court held "that the sentencer . . . [may] not be precluded from considering *as a mitigating factor* . . . [any evidence which] the defendant proffers as a basis for a sentence less than death." *Id.* at 604, 57 L. Ed. 2d at 990. The sentencer also may not refuse to consider any relevant mitigating evidence. *Eddings v. Oklahoma*, 455 U.S. 104, 114, 71 L. Ed. 2d 1, 11 (1982). "However, neither *Lockett* nor *Eddings* requires that the sentencer must determine that the submitted mitigating circumstance has mitigating value." *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988), *judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 329 N.C. 233, 404 S.Ed.2d 842 (1991).

If the jury determines that a statutory mitigating circumstance exists, it must consider the circumstance in its deliberations even though "[t]he weight any circumstance may be given is a decision entirely for the jury." *State v. Kirkley*, 308 N.C. 196, 220, 302 S.E.2d 144, 158 (1983), *overruled on other grounds, State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). However, it is entirely "for the jury to determine whether submitted nonstatutory mitigating circumstances have mitigating value." *Fullwood*, 323 N.C. at 396, 373 S.E.2d at 533. Once the trial court has submitted all requested nonstatutory mitigat-

STATE v. ROBINSON

[339 N.C. 263 (1994)]

ing circumstances supported by the evidence which the jury could reasonably deem to have mitigating value, the jury must determine if the evidence supports the existence of the circumstance and if it has mitigating value. *Id.* "Although evidence may support the existence of the nonstatutory circumstance, the jury may decide that it is not mitigating." *Fullwood*, 323 N.C. at 397, 373 S.E.2d at 533.

In the present case, it is a reasonable conclusion that one or more jurors found defendant's statement to law enforcement officers to have mitigating value in the murder of James Worley because defendant stated that McLaughlin murdered Worley and the physical evidence tended to support defendant's statements. In the opinion of the medical examiner, defendant did not inflict any wounds on James Worley while Worley was alive. It is an equally reasonable conclusion that a juror or jurors found defendant's statement concerning the murders of Denise Worley and Psoma Baggett lacking mitigating value since defendant was not truthful as to who actually killed the two female victims. Defendant initially told the officers that McLaughlin had already killed Denise Worley when defendant arrived at McLaughlin's trailer; however, the evidence introduced at trial revealed that defendant personally inflicted fatal blows on Denise Worley and Psoma Baggett while they were alive. One or more jurors could view the murders of the female victims as being the more aggravated and rationally conclude that the nature of defendant's May 1984 statement possessed mitigating value in the murder of James Worley but not in the murder of the female victims. Accordingly, we reject defendant's argument.

[3] Defendant next argues that the trial court erred in allowing the State to introduce inadmissible hearsay evidence concerning defendant's 1969 murder conviction in Colorado. Prior to resting its case, the State, over objection, read the judgment from State's Exhibit No. 42 to the jury. The entire exhibit was then published to the jury without objection. Although the exhibit was nineteen pages in length, only five pages actually were related to the judgment. One of the pages not related to the judgment was an affidavit in support of a search warrant. The first paragraph of the affidavit states:

On April 11, 1969, around 10:00 p.m. Jacqueline Anna Bennett was shot and killed at the little Red Barn, 3830 East Pikes Peak Avenue, Colorado Springs, Colorado. Her daughter, Theresa Bennett, observed the subject who had shot her mother, run from the store, and described the suspect as: A young negro male,

round face, about 5'8" tall, wearing black 3/4 length coat, dark trousers, and black shoes.

Defendant contends the admission into evidence of the affidavit violated his right to confront adverse evidence because it contained hearsay and the affiant, Theresa Bennett, was unavailable for cross-examination. Defendant further contends the admission of this evidence was highly prejudicial in that it educated the jury that the victim in the earlier crime had children and that at least one of her children witnessed her murder. Defendant points out that the prosecutor relied on this information in his closing argument, stating that "[t]here are children in this world today that are without mothers because of [defendant]." We find no merit in this assignment of error.

We note first that only a general objection was lodged against the admission into evidence of State's Exhibit No. 42. Defendant stated no basis for and, after twice being asked by the court if he wanted to be heard, proffered no argument in support of the objection. As such, the objection is insufficient to preserve this issue for appellate review. However, in light of our inherent authority pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure and in an effort to prevent manifest injustice to a party, we elect to consider the merits of defendant's constitutional claims. State v. Elam, 302 N.C. 157, 273 S.E.2d 661 (1981).

Defendant's argument relies on previous opinions of this Court holding that:

It is error to allow a search warrant together with the affidavit to obtain search warrant to be introduced into evidence because the statements and allegations contained in the affidavit are hearsay statements which deprive the accused of his rights of confrontation and cross-examination. See State v. Oakes, 249 N.C. 282, 106 S.E.2d 206 [1958].

State v. Spillars, 280 N.C. 341, 352, 185 S.E.2d 881, 888 (1972). See also State v. Edwards, 315 N.C. 304, 337 S.E.2d 508 (1985); State v. Jackson, 287 N.C. 470, 215 S.E.2d 123 (1975). While this is still the law, the facts of these cases are distinguishable from the instant case. In each of these cases, the search or arrest warrant and its supporting affidavit related to the actual crime for which defendant was presently being tried. In these cases, each of these documents alluded to defendant's duplicity in the crime for which he was charged prior to his conviction for the crime. Also, in each case the warrant and affi-

davit were offered into evidence during the guilt-innocence phase of the trial. Under these circumstances, the defendants' right of confrontation was violated.

In comparison, here, the search warrant and affidavit in support of the warrant related to a prior conviction, not the conviction for which defendant presently was being sentenced. Furthermore, State's Exhibit No. 42 was entered into evidence during the sentencing proceeding, not the guilt-innocence phase. While the record does not affirmatively show that the search warrant and affidavit were published to the jury, we will presume that the contents of the entire exhibit were made known to the jury. *State v. Spillars*, 280 N.C. at 352, 185 S.E.2d at 888. In contrast to the evidence in *Edwards*, *Spillars*, *Oakes*, and *Jackson* which potentially affected the jury's determination of a defendant's guilt or innocence, the evidence here was relevant during the capital sentencing proceeding to prove the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." N.C.G.S. § 15A-2000(e)(3) (1988). "[E]vidence of the circumstances of prior crimes is admissible to aid the sentencer." *State v. Roper*, 328 N.C. 337, 364, 402 S.E.2d 600, 615-16, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991).

In *Roper*, the State was allowed to present the out-of-court statement of an eyewitness to a previous killing to which defendant pled guilty to voluntary manslaughter and the out-of-court statement of a stepniece that defendant had raped her to which defendant pled guilty to attempted second-degree rape. *State v. Roper*, 328 N.C. at 366, 402 S.E.2d at 617. We held that these statements were admissible to prove the circumstances of the crimes for which defendant previously had been convicted. Therefore, it follows that the State properly could have introduced the search warrant and the supporting affidavit in this case into evidence during the sentencing proceeding to prove the circumstances of the prior felony conviction, had it wished. The fact that the documents were inadvertently introduced into evidence, without objection, along with the judgment documents, does not constitute error.

Assuming *arguendo* that the documents were admitted into evidence in violation of defendant's right of confrontation, it was harmless beyond a reasonable doubt as required by N.C.G.S. § 15A-1443(b). Based on the overwhelming inculpatory evidence presented in the proceeding, the error, if any, could not have prejudiced

defendant. First, defendant does not dispute his conviction in Colorado of first-degree murder. Second, the comment by the prosecutor during his closing statement, that there are children in the world today who are motherless because of defendant, readily applies to the motherless child resulting from these three murders as well. Victim impact evidence is admissible in capital sentencing proceedings. *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720 (1991). We note that defendant not only did not object when the entire exhibit was entered into evidence, but no objection was made when the prosecutor commented during his closing argument about the orphaned children. Finally, substantially equivalent evidence was brought out during the cross-examination of defendant's expert witness, Dr. Lara. This Court has long held that when evidence is later admitted without objection, the benefit of any previous objection is lost. *State v. Maccia*, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984). This assignment of error is overruled.

**[4]** Defendant next assigns as error the trial court's denial of his motion to permit questioning of prospective jurors regarding parole eligibility. While acknowledging that this Court has long held that parole eligibility is not relevant in a capital sentencing proceeding, defendant asks us to reconsider our position. *State v. Jones*, 336 N.C. 229, 443 S.E.2d 48, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 423, 63 U.S.L.W. 3386 (1994), *reh'g denied*, —— U.S. ——, 130 L. Ed. 2d 676 (1995); *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994); *State v. Roper*, 328 N.C. 337, 402 S.E.2d 600; *State v. Conner*, 241 N.C. 468, 85 S.E.2d 584 (1955). Recently, in *Simmons v. South Carolina*, —— U.S. ——, 129 L. Ed. 2d 133 (1994), the United States Supreme Court held that in a capital sentencing proceeding where the state law provides that a defendant sentenced to life imprisonment will not be eligible for parole, it is violative of due process to deny defendant's request for a jury instruction that under state law defendant, if sentenced to life imprisonment, would not be eligible for parole. This Court stated in *State v. Price*, 337 N.C. 756, 448 S.E.2d 827 (1994), that the

> United States Supreme Court's decision in *Simmons* is limited to those situations where the alternative to a sentence of death is life imprisonment without possibility of parole. The language and rationale of the main opinion and the concurring opinions are expressly confined to situations in which a defendant sentenced to life imprisonment will not be eligible for parole.

*Id.* at 763, 448 S.E.2d at 831. This Court has determined that *Simmons* does not control if a defendant would be eligible for parole under North Carolina law. *See State v. Payne,* 337 N.C. 505, 516-17, 448 S.E.2d 93, 99-100 (1994); *State v. Bacon,* 337 N.C. 66, 98, 446 S.E.2d 542, 558-59, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 1083 (1994); *State v. Skipper,* 337 N.C. at 44, 446 S.E.2d at 275-76 (1994). In this case, as in *Payne, Bacon,* and *Skipper,* defendant would be eligible for parole if he received a life sentence. *See* N.C.G.S. § 15A-1371(a1) (1988).

We conclude that *Simmons* is not applicable to this case because defendant could have been eligible for parole, and because the particular issue in the present case is whether jurors can be questioned about parole eligibility. We continue to adhere to our previous decisions on this point and determine that no questioning of prospective jurors regarding parole eligibility is required in this case to satisfy due process. This assignment of error is without merit.

[5] By his next assignment of error, defendant argues that the trial court's use of the word "may" in issues three and four on the "ISSUES AND RECOMMENDATION FORM" permitted each juror, in his or her discretion, to decide whether or not to consider in mitigation evidence which that juror had already determined to exist in issue two. Defendant contends the instruction as given allows a juror to arbitrarily ignore mitigating evidence in violation of N.C.G.S. § 15A-2000.

In instructing the jury on issue three, the trial court instructed substantially as follows in all three cases:

> Issue three is do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances found by one or more of you is or are insufficient to outweigh the aggravating circumstance or circumstances found by you? If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances. When deciding this issue each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in issue two.

With regard to issue four, the trial court instructed substantially as follows in all three cases:

> Issue four is do you [find] unanimously beyond a reasonable doubt that the aggravating circumstance or circumstances you

**STATE v. ROBINSON**

[339 N.C. 263 (1994)]

found is or . . . are sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you? In deciding this issue you're not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances found by one or more of you. When making this comparison each juror may consider any mitigating circumstance or circumstances that juror determine[d] to exist by a preponderance of the evidence.

Since defendant failed to object to the instruction, this assignment of error is reviewable only under plain error analysis. *See State v. Syriani*, 333 N.C. at 376, 428 S.E.2d at 132. To prevail, "defendant must [demonstrate] not only that the trial court committed error, but that 'absent the error, the jury probably would have reached a different result.' " *State v. Sierra*, 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994) (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)).

In *State v. Lee*, 335 N.C. 244, 439 S.E.2d 547, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162, 63 U.S.L.W. 3264, *reh'g denied*, —— U.S. ——, 130 L. Ed. 2d 162, 63 U.S.L.W. 3422 (1994), defendant advanced a similar argument and we held that "[t]he jury charge given in [that] case did not preclude the jurors from giving effect to all mitigating evidence they found to exist." *Id.* at 287, 439 S.E.2d at 570. The jury charge given in this case is virtually identical to the one in *Lee*. Defendant offers no new or additional arguments and fails to persuade us to reverse or alter our recent precedent. *See also State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547, 63 U.S.L.W. 3437 (1994). This assignment of error is overruled. Accordingly, since defendant has failed to demonstrate error, we need not undergo plain error analysis.

**[6]** Finally, defendant contends the trial court erred in sustaining the prosecutor's objections to certain portions of defendant's jury argument. Defendant argues that this restriction violated his right to effective assistance of counsel. We disagree.

The scope of closing argument is governed by N.C.G.S. § 15A-1230 which provides, in pertinent part:

(a) During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the

guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

N.C.G.S. § 15A-1230(a) (1988). While "[c]ounsel is given wide latitude to argue the facts and all reasonable inferences which may be drawn therefrom," *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977), "the conduct of arguments of counsel to the jury must necessarily be left largely to the sound discretion of the trial judge." *State v. Whiteside*, 325 N.C. 389, 398, 383 S.E.2d 911, 916 (1989).

In the first instance, defense counsel argued:

This man has had no one. He didn't have a mother, a father to come in and testify for him during the sentencing hearing and, you know, usually that is a major part of any sentencing hearing is to put the mother—

The trial court sustained the prosecutor's objection and allowed the motion to strike. There was no evidence before the jury to support the argument that capital defendants usually put their mothers on the witness stand during the sentencing proceeding in a capital case. The trial court did not abuse its discretion in disallowing defense counsel's assertion.

[7] In the second instance, defense counsel argued:

This is not something where we're strictly trying to determine guilt or innocence. This has already been decided. There you look at the facts, but here you're allowed to speak from your heart. Is there not one among the twelve of you that has a kind heart? Mr. Womble and I do think so. That's why we picked you people as jurors. I'm sure I don't have to remind you of all the long tedious process we went through selecting jurors and we felt that you people had the most open minds and the kindest hearts of all those people we questioned and we have confidence in you. If there is any one of you sitting here that believes for some reason on earth, I don't know what reason it be, some reason known only to you and your God why he shouldn't be put to death and should be allowed to live, then you can hold to that conviction.

Although the trial court sustained the prosecutor's objection, he noted that "[y]ou may argue that point but you will have to argue it in another fashion, please."

**STATE v. ROBINSON**

[339 N.C. 263 (1994)]

In essence, the argument asks the jurors to disregard the facts, "speak from [their] heart[s]," and find "some reason on earth" to recommend a life sentence rather than the death penalty. Each request improperly urges the jurors to base their decision on reasons not based on the mitigating and aggravating evidence presented at the sentencing proceeding. *See California v. Brown,* 479 U.S. 538, 543, 93 L. Ed. 2d 934, 941 (1987). Under these circumstances we find no abuse of discretion. This assignment of error is overruled.

## II. PRESERVATION ISSUES

Defendant raises three additional issues which he concedes have been decided against him by this Court: (i) that the definition of mitigation as given precluded consideration of the evidence in mitigation not rooted in the circumstances of the crime; (ii) that the trial court erred in permitting jurors to reject nonstatutory mitigating circumstances as having no mitigating value; and (iii) that defendant's right to counsel was violated when the trial court refused to permit him to question each juror challenged for cause by the State regarding his feelings about capital punishment. We have examined defendant's argument on each of these issues and find no compelling reason to alter our prior rulings. We overrule these assignments of error.

## III. PROPORTIONALITY

Having reviewed defendant's capital sentencing proceeding and having found it to be free of error, the capital sentencing statute next requires us to review the entire record to determine whether: (i) it supports the jury's finding of aggravating circumstances; (ii) the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2); *State v. McCollum,* 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied,* —— U.S. ——, 129 L. Ed. 2d 924 (1994); *State v. Robbins,* 319 N.C. 465, 526, 356 S.E.2d 279, 315, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

The jury found in aggravation in the murders of Denise Worley and Psoma Baggett that: (i) defendant had previously been convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) the murder was committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4); and (iii) the murder was part of a course of conduct which included other

crimes of violence committed by defendant against additional victims, N.C.G.S. § 15A-2000(e)(11). The record supports the jury's finding of each of these aggravating circumstances and nothing in the record, transcripts, or briefs submitted by the parties suggests that the two death sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor.

[8] Turning to our final statutory duty, we must determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983). First, we look at similar cases in a pool consisting of

> *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*Id.* We have recently clarified the composition of the proportionality pool, noting:

> Because the "proportionality pool" is limited to cases involving first-degree murder convictions, a post-conviction proceeding which holds that the State may not prosecute the defendant for first-degree murder or results in a retrial at which the defendant is acquitted or found guilty of a lesser included offense results in the removal of that case from the "pool." When a post-conviction proceeding results in a new capital trial or sentencing proceeding, which, in turn, results in a life sentence for a "death-eligible" defendant, the case is treated as a "life" case for purposes of proportionality review. The case of a defendant sentenced to life imprisonment at a resentencing proceeding ordered in a post-conviction proceeding is similarly treated. Finally, the case of a defendant who is either convicted of first-degree murder and sentenced to death at a new trial or sentenced to death in a resentencing proceeding ordered in a post-conviction proceeding, which sentence is subsequently affirmed by this Court, is treated as a "death-affirmed" case.

*State v. Bacon,* 337 N.C. at 107, 446 S.E.2d at 564.

The pool includes only cases found to be free of error in both the guilt-innocence and penalty phases.

> In essence, our task on proportionality review is to compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and the defendant's character, background, and physical and mental condition.

*McCollum,* 334 N.C. at 239, 433 S.E.2d at 161 (quoting *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985)). When our review reveals that juries have consistently returned death sentences in those similar cases, a strong basis exists for concluding that the death sentence under consideration is not excessive or disproportionate. However, if juries have consistently returned life sentences in these similar cases, a strong basis exists for concluding that the sentence being reviewed is excessive or disproportionate. *State v. Syriani,* 333 N.C. at 400, 428 S.E.2d at 146.

Defendant was convicted of all three first-degree murders based upon the theory of premeditation and deliberation. As to the murder of James Worley, the jury found both aggravating circumstances submitted: (i) defendant had previously been convicted of a felony involving the use of violence, and (ii) the murder was committed for pecuniary gain. In mitigation, the jury found six of the fifteen circumstances submitted: (i) the murder was committed while defendant was under the influence of a mental or emotional disturbance, (ii) this particular murder was actually committed by a codefendant and defendant was only an accomplice in the murder and his participation was relatively minor, (iii) defendant acted under the domination of another person, (iv) defendant testified truthfully on behalf of the prosecution in another prosecution of a felony, (v) defendant voluntarily confessed to the crimes without asking for or without the assistance of counsel, and (vi) defendant's IQ is low in that it is within range of borderline mentally retarded to low-average/dull normal. After weighing the aggravating and mitigating circumstances, the jury returned a life sentence. As a result, our review of this sentence need go no further.

In the murders of Denise Worley and Psoma Baggett, the jury found all three aggravating circumstances submitted: (i) defendant had been previously convicted of a felony involving the use of vio-

lence, (ii) the murder was committed for the purpose of·avoiding or preventing a lawful arrest, and (iii) the murder was part of a course of conduct which included other crimes of violence committed by defendant against additional victims. In mitigation of each murder, the jury found only three of the fifteen circumstances submitted: (i) the murders were committed while defendant was under the influence of a mental or emotional disturbance, (ii) defendant testified truthfully on behalf of the prosecution in another prosecution of a felony, and (iii) defendant's IQ is low in that it is within a range of borderline mentally retarded to low-average/dull normal.

Significant characteristics of defendant's case include (i) premeditated and deliberate murder of three members of a family; (ii) coldly calculated plans of attack by defendant and his accomplice; (iii) the conscienceless abandonment of a helpless one-year-old child in a flooded automobile with the body of her mother; (iv) fear and physical pain and suffering on the part of the four-year-old victim, Psoma Baggett, as she was rudely awakened, placed in a car with a stranger, driven to a field, and repeatedly hit with a pipe until losing consciousness; (v) defendant's motive for committing the second and third murders was to avoid apprehension for having murdered James Worley for financial gain; and (vi) defendant's prior conviction for first-degree murder.

This Court has found the death penalty to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Of these cases, none involved three aggravating circumstances and none involved a multiple homicide. *See State v. Roper*, 328 N.C. at 373-76, 402 S.E.2d at 621-22. We conclude the present case is significantly dissimilar from *Benson, Stokes, Rogers, Young, Hill, Bondurant*, and *Jackson*.

Defendant, however, relies on *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987), where the jury recommended a life sentence for the codefendant as a basis for his argument that his death sentences are disproportionate. Defendant contends the overriding factor militating in favor of disproportionality in this case is that Elton McLaughlin, the mastermind of the crimes committed, received life sentences for murders for which defendant is sentenced to die. *Stokes* is readily distinguishable from the present case.

Significant dissimilarities between this case and *Stokes* include: (i) defendant Stokes was convicted of one murder; defendant Robinson was convicted of three; (ii) defendant Stokes was seventeen years old at the time of the murders; defendant Robinson was approximately thirty-five; (iii) defendant Stokes was convicted on a felony-murder theory; defendant Robinson was convicted of premeditated and deliberate murder; (iv) the codefendant in *Stokes* did not receive the death penalty; Elton McLaughlin was sentenced to death for the murder of James Worley; and (v) in *Stokes* the jury found in mitigation of the crime that defendant's criminal record consisted only of property offenses and one assault committed as a juvenile; in the present case the jury found as an aggravating circumstance that defendant had been convicted of a prior felony involving the use of violence.

We find the more analogous cases to be *State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321 (1993), *cert denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994), and *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981). In *Gibbs*, defendant was convicted of three counts of first-degree murder under theories both of premeditation and deliberation and felony murder. Defendant murdered his mother-in-law, sister-in-law, and brother-in-law, after having made threats in the presence of his wife to harm the family. Defendant bound and gagged his victims before shooting them. As to each murder, the jury found all three aggravating circumstances submitted: (i) the capital felony was committed during a felony (burglary); (ii) the capital felony was especially heinous, atrocious, or cruel; and (iii) the murder was part of a course of conduct in which defendant committed other crimes of violence against other victims. During defendant Robinson's sentencing hearing for the murders of Denise Worley and Psoma Baggett, the jury also found three aggravating circumstances, including that the murders were committed as part of a course of conduct involving other violent crimes. The jury in *Gibbs* found three of the four submitted statutory mitigating circumstances to exist; in the present case, the jury deemed only two statutory mitigating circumstances to have mitigating value.

In *Hutchins*, defendant was convicted of murdering two deputy sheriffs and a state trooper in an effort to avoid being arrested for assaulting his daughter. The jury found in aggravation of the murders that they were committed during a course of conduct involving the

**STATE v. ROBINSON**

[339 N.C. 263 (1994)]

commission of other violent crimes, were committed to avoid a lawful arrest and were committed against law enforcement officers. In contrast to defendant Robinson's prior murder conviction, the State, in the prosecution of Hutchins, presented no evidence of any prior criminal history. In Robinson's sentencing proceeding for the murders of the female victims, the jury found two of these same aggravating circumstances and that defendant had a prior conviction of a felony involving violence. The Court in *Gibbs* and *Hutchins* found the death sentences given the respective defendants not to be excessive or disproportionate, considering both the crimes and the defendant.

We also note that this defendant not only committed multiple murders in the case now pending before the Court, but had previously been convicted of first-degree murder. We find this significant, as this Court has found the death penalty to be proportionate in other cases where a defendant has been convicted of a prior violent felony and the murder for which he was sentenced to death was part of a course of conduct in which defendant committed other crimes of violence against other victims. *See State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (defendant had previously been convicted of assault with a deadly weapon inflicting serious injury and received death sentences for shooting two people with premeditation and deliberation); *State v. Vereen*, 312 N.C. 499, 324 S.E.2d 250, *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985) (defendant had previously been convicted of common law robbery, and during the murder for which he received the death sentence he had assaulted another with a deadly weapon, inflicting serious injury); *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983) (defendant had previously been convicted of rape, and during the murder for which he received the death sentence, he assaulted another with a deadly weapon with intent to kill inflicting serious injuries).

Defendant Robinson was convicted of three first-degree murders; and the record clearly establishes a cold-blooded, calculated course of conduct on the part of defendant which amounts to a wanton disregard for the value of human life. In light of all the cases discussed hereinabove, we cannot say that the two death sentences were excessive or disproportionate, considering both the crimes and defendant.

## IV. CONCLUSION

We hold that defendant received a fair sentencing proceeding, free from prejudicial error. The death sentences were not imposed under the influence of passion, prejudice, or any other arbitrary fac-

tor. The death sentences imposed are not disproportionate to the penalty imposed in similar cases.

NO ERROR.