No. 93–7200. McCOLLUM *v.* NORTH CAROLINA. Sup. Ct. N. C. Certiorari denied.

JUSTICE BLACKMUN, dissenting.

Henry Lee "Buddy" McCollum is sentenced to be executed for his part in a brutal crime. He participated with three other young men in the rape and murder of an 11-year-old girl. Each raped the child, and McCollum helped hold her down while an-

other young man stuffed her panties down her throat with a stick. When I announced in *Callins* v. *Collins,* 510 U. S. 1141, 1143 (1994) (opinion dissenting from denial of certiorari), that I had reached the conclusion that the death penalty, as currently administered, is unconstitutional, JUSTICE SCALIA questioned why I did not choose Buddy McCollum's case as the vehicle to announce that position. *Id.,* at 1142–1143 (SCALIA, J., concurring in denial of certiorari). He seemed to believe that my position would be harder to defend in a case like this one that "cries out for punishment." 334 N. C. 208, 245, 433 S. E. 2d 144, 165 (1993) (Exum, C. J., concurring in part and dissenting in part). Far from it. The crime indeed is abhorrent, but there is more to the story.

Buddy McCollum is mentally retarded. He has an IQ between 60 and 69 and the mental age of a 9-year-old. He reads on a second-grade level. This factor alone persuades me that the death penalty in his case is unconstitutional. See *Penry* v. *Lynaugh,* 492 U. S. 302, 350 (1989) (STEVENS, J., concurring in part and dissenting in part) (executions of the mentally retarded are unconstitutional).

The sentencing jury found two aggravating circumstances: that the murder was committed to avoid arrest and that the murder was especially heinous, atrocious, or cruel. It found seven mitigating circumstances: that McCollum was mentally retarded, that he had difficulty thinking clearly under stress, that he was easily influenced by others, that he committed the felony murder under the influence of mental or emotional disturbance, that he had cooperated with the police, that he had no significant history of prior criminal activity, and that he had adapted well to prison. In addition, the trial judge concluded that "[a]ll of the evidence tends to show that [McCollum's] capacity . . . to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired." App. to Pet. for Cert. 50. McCollum was 19 at the time of the crime.

Along with these compelling mitigating circumstances, the evidence at trial tended to show that Buddy McCollum was far from the most culpable of the four accomplices. He was not the one who initiated the rape, the one who proposed the murder, or the one who actually committed the murder. Nonetheless, he was the only one convicted of murder and the only one sentenced to die.

North Carolina's death penalty scheme requires appellate proportionality review, N. C. Gen. Stat. §15A–2000(d)(2) (1988), and the Chief Justice of the North Carolina Supreme Court found himself compelled to conclude that the death penalty for Buddy McCollum was disproportionate. 334 N. C., at 248–250, 433 S. E. 2d, at 167–168 (Exum, C. J., dissenting). North Carolina jurors had never before recommended death for a defendant whom they had found mentally retarded. Only once had jurors recommended death where there was even any evidence of mental retardation. No North Carolina jury ever had recommended death for a felony murderer under 20 years of age. Nor had any jury recommended death in a sexual offense felony murder where there was evidence of the defendant's mental and emotional disturbance, not even where the defendant was the actual perpetrator of an especially heinous, atrocious, or cruel killing.

That our system of capital punishment would single out Buddy McCollum to die for this brutal crime only confirms my conclusion that the death penalty experiment has failed. Our system of capital punishment simply does not accurately and consistently determine which defendants most "deserve" to die.