STATE OF NORTH CAROLINA v. ANGEL GUEVARA A/K/A JOSE ROSADO

No. 296A96

(Filed 6 November 1998)

## 1. Evidence and Witnesses § 1606 (NCI4th)— shooting of officer—eyewitness account—lawfulness of entry irrelevant

Regardless of whether a deputy lawfully entered defendant's home without a warrant, another officer's eyewitness account of the subsequent shooting of the deputy by defendant was not barred as "fruit of the poisonous tree" by application of the exclusionary rule. The exclusionary rule does not require the exclusion of evidence obtained after an illegal entry when that evidence is offered to prove the murder of one of the officers making the entry.

## 2. Searches and Seizures § 28 (NCI4th)— arrest—warrantless entry into home—exigent circumstances

A deputy's warrantless entry into defendant's home to arrest defendant was lawful due to the presence of exigent circumstances where the deputy had probable cause to arrest defendant for felony charges pending against him in North Carolina and New York; upon hearing another officer state to a dispatcher that they would take defendant in, defendant retreated into his home and slammed the door, which created the appearance that he was fleeing or trying to escape; and defendant was accompanied by a young child.

## 3. Criminal Law § 503 (NCI4th Rev.)— review of testimony— request by jury—denial as exercise of discretion

Assuming that the jury's request for "Medlin's testimony" was a request for a transcript of this witness's testimony or alternatively to have the testimony read back by the court reporter, the record shows that the trial court properly exercised its discretion under N.C.G.S. § 15A-1233(a) in declining to provide to the jury a review of the witness's testimony where the fact that the trial court considered the jury's request and acknowledged it had authority to provide the testimony to the jury is indicated by the trial court's comment that "frequently that's done," and the trial court did not indicate that it could not make the transcript or review of the testimony available to the jury.

**4. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—statutory mitigating circumstances—absence of mitigating value—jury not misled**

The prosecutor's statement in his concluding argument about statutory and nonstatutory mitigating circumstances in a capital sentencing proceeding that he didn't "see how any of these mitigating factors have any mitigating value whatsoever" could not have misled the jurors to believe that they could accord the statutory mitigating circumstances no mitigating value when viewed in the overall context in which the statement was made. Furthermore, any error was rendered harmless by the trial court's instruction making a clear distinction between statutory and nonstatutory mitigating circumstances, the distinction made on the Issues and Recommendation as to Punishment form, and instructions and closing arguments reiterating the jurors' duty to follow the law as given to them by the trial court.

**5. Criminal Law § 1369 (NCI4th Rev.)— capital sentencing— aggravating circumstances—law officer engaged in official duties—effect of illegal entry**

The trial court properly submitted to the jury in a capital sentencing proceeding the (e)(8) aggravating circumstance that the murder was committed against a law enforcement officer "while engaged in the performance of his official duties" even if the officer improperly entered defendant's home without a warrant to arrest defendant, since defendant was still not justified in using deadly force against an officer attempting to effect an arrest. N.C.G.S. § 15A-2000(e)(8); N.C.G.S. § 15A-401(f)(1), (2).

**6. Criminal Law § 453 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—victim impact statement**

The prosecutor's victim impact argument in a capital sentencing proceeding that the victim "was a good father, husband, son, brother and friend" was supported by the evidence and was not improper.

**7. Criminal Law § 453 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—crowd at trial—victim as family man—no gross impropriety**

The prosecutor's argument in a capital sentencing proceeding that "I think you can tell from the size of the crowd which had attended most of this trial" that the victim was a family man was

not so grossly improper as to require the trial court to intervene *ex mero motu.*

**8. Criminal Law § 475 (NCI4th Rev.)— capital sentencing— prosecutor's irrelevant closing argument—no due process denial**

The prosecutor's irrelevant argument in a capital sentencing proceeding that Michael Jordan wept on Father's Day after winning the NBA championship was not so grossly improper as to result in a denial of defendant's right to due process, especially since the trial court sustained defendant's objection and advised the jurors not to consider the statement.

**9. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—use of song lyrics—no gross impropriety**

The prosecutor's use of the lyrics of a song during his closing argument in a capital sentencing proceeding for the murder of a law officer did not improperly suggest that the cards were stacked against the State at the sentencing phase or impugn defendant's right to counsel so as to require the trial court to exclude these comments *ex mero motu.* Assuming *arguendo* that the lyrics could be so interpreted, the prosecutor's argument was not so unduly prejudicial as to render the sentencing phase of the trial fundamentally unfair.

**10. Criminal Law § 461 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—not general deterrence argument**

The prosecutor did not improperly argue general deterrence in a capital sentencing proceeding when he commented that a State's exhibit showed the way the victim was left and his plea was answered and that "unless the killing of a law enforcement officer is dealt with the upmost seriousness, then the disrespect for law and order that is inherent in that despicable act is encouraged"; rather, the comments were a proper argument on the seriousness of the crime.

**11. Criminal Law § 1066 (NCI4th Rev.)— capital sentencing— disallowance of allocution**

It is not error for the trial court in a capital case to disallow allocution.

**12. Criminal Law § 1374 (NCI4th Rev.)— capital sentencing— course of conduct aggravating circumstance—failure to convict of felony murder**

The trial court did not err in submitting to the jury in a capital sentencing proceeding the (e)(11) course of conduct aggravating circumstance when the jury did not mark whether it found defendant guilty of felony murder since the jury also found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury on a second victim, and the jury's affirmative response that it found defendant guilty of first-degree murder on the basis of malice, premeditation and deliberation did not indicate that the jury rejected conviction under the felony murder rule. N.C.G.S. § 15A-2000(e)(11).

**13. Criminal Law § 1351 (NCI4th Rev.)— capital sentencing— use of "may" in sentencing issues**

The trial court did not commit constitutional error in a capital sentencing proceeding by its use of the word "may" in sentencing Issues Three and Four.

**14. Criminal Law § 1349 (NCI4th Rev.)— capital sentencing— instructions—nonstatutory mitigating circumstances— mitigating value**

The trial court did not err by instructing the jurors that they could reject nonstatutory mitigating circumstances on the basis that they had no mitigating value.

**15. Criminal Law § 1378 (NCI4th Rev.)— capital sentencing— instructions—existence of mitigating circumstances**

The trial court did not err by instructing the jury in a capital sentencing proceeding that it must be satisfied that any mitigating circumstances exist.

**16. Criminal Law § 1402 (NCI4th Rev.)— death sentence not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where the evidence showed that defendant stood in his mobile home and used a rifle to kill a deputy sheriff, including the firing of shots at the officer after the officer was down; defendant shot a second officer from a distance and severely wounded him; defendant made no attempt to assist the officers but fled in his truck; the jury convicted defendant under the theory of premeditation and delibera-

tion; and the jury found as aggravating circumstances that the murder was committed against a law enforcement officer engaged in the performance of his official duties and that the murder was part of a course of conduct which included a crime of violence against another person.

Justice FRYE concurring.

Justice WHICHARD joins in this concurring opinion.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Jenkins, J., at the 6 May 1996 Criminal Session of Superior Court, Johnston County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment for assault with a deadly weapon with intent to kill inflicting serious injury was allowed by this Court 28 July 1997. Heard in the Supreme Court 10 March 1998.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

The defendant was indicted for first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was tried capitally to a jury at the 6 May 1996 Criminal Session of Superior Court, Johnston County, Judge Knox V. Jenkins, Jr., presiding. The jury found defendant guilty of both charges. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to death for the first-degree murder conviction. On 20 June 1996, the trial court sentenced defendant to death for the first-degree murder conviction and to a term of 92 to 120 months' imprisonment for the assault with a deadly weapon with intent to kill inflicting serious injury conviction.

At trial, the State presented evidence tending to show that on the afternoon of 2 September 1995, when the temperature was approximately eighty-five degrees, Benjamin Becker, a security officer, dis-

covered an automobile parked outside North Hills Mall in Raleigh, North Carolina, with the doors locked and windows up, and three small children inside. Officer Becker was investigating the situation when defendant approached and started screaming and pointing his fingers in the officer's face. Without provocation, defendant pulled out an approximately four-inch knife and repeatedly lunged towards the unarmed officer. Defendant eventually leaped back into his car and quickly drove away. Officer Becker obtained the license plate number and reported the incident to the Raleigh Police Department. Pursuant to a license plate check, Detective Paula O'Neal determined Jose Rosado of 39 Morehead Drive, West Johnston Mobile Home Park, in Johnston County, to be a suspect. Jose Rosado was also wanted for the felony of false pretense and in an assault case.

On the morning of 11 September 1995, in response to a request from the Raleigh Police Department, two officers with the Johnston County Sheriff's Department, Lieutenant Ronald Medlin and Deputy Paul West, went to a Johnston County mobile home park to verify the address of a man named Jose Rosado. Upon the officers' arrival at 39 Morehead Drive, West Johnston Mobile Home Park, Lieutenant Medlin knocked at the front door for several minutes, but no one responded. A red Mustang convertible and a gray Dodge Ram pickup truck were parked outside. Deputy Medlin asked the dispatcher, Phyllis Edwards, to run a license check on the Mustang, and the dispatcher responded that the automobile was registered to Jose Rosado. Lieutenant Medlin then turned around and saw defendant, accompanied by a two- or three-year-old boy, standing outside the mobile home's back door. The officers asked defendant if he was Jose Rosado, and he informed the officers that Rosado was not there. After being asked for identification, defendant handed Lieutenant Medlin a passport which contained defendant's picture and indicated that he was Angel Guevara. The officers believed that he was Rosado and that he was wanted on an outstanding arrest warrant in North Carolina for the felony of false pretense. The officers further learned from the dispatcher that Rosado was also wanted in New York City under the name of Angel Guevara for the felony of reckless endangerment.

Lieutenant Medlin, standing near defendant's door, used his walkie-talkie to ask the dispatcher to check with New York authorities as to whether defendant was still wanted. Upon confirmation that defendant was still wanted, Lieutenant Medlin stated that they would take him in. Defendant heard Lieutenant Medlin's words and

**STATE v. GUEVARA**

[349 N.C. 243 (1998)]

retreated into his home and slammed the back door. Deputy West pushed the door open and entered the mobile home. Lieutenant Medlin did not lose sight of Deputy West at any time. In a matter of seconds, Lieutenant Medlin saw Deputy West throw his right hand up and heard him say, "No, no, no, don't, don't." Lieutenant Medlin heard a shot, and Deputy West fell to the floor facedown, where he died.

Lieutenant Medlin called for assistance and headed towards the door of the mobile home with his gun drawn. He heard another shot and was knocked by the bullet onto the hood of a car which was parked nearby. Lieutenant Medlin could see defendant inside the mobile home and could see Deputy West lying on the floor, his weapon still inside its holster. Lieutenant Medlin, although severely injured, managed to make his way back to his marked sheriff's car. He heard another shot, then saw defendant come out of the mobile home, get into his truck and speed away. Other officers and emergency personnel quickly arrived at the scene. Defendant was arrested several days later in New York City. Lieutenant Medlin sustained three serious wounds to the right side of his chest and, as of the time of trial, had not been able to return to work. An autopsy report indicated that Deputy West sustained a large, fatal bullet wound to the left side of his chest; another gunshot wound to the left groin area; multiple blunt-force injuries to his head; and severe bruises on his head, neck, lower chest area and left shoulder.

**[1]** In his first assignment of error, defendant contends that the trial court erred in declining to suppress Lieutenant Medlin's eyewitness account of the shooting of Deputy West. Defendant argues that this testimony was the "fruit of the poisonous tree" because Deputy West illegally entered defendant's home without a warrant. We conclude that the trial court correctly declined to suppress Lieutenant Medlin's eyewitness account.

We first note that under the circumstances here presented, it is unnecessary to consider whether Deputy West lawfully entered defendant's home. This Court has held that under the exclusionary rule, "[w]hen evidence is obtained *as the result* of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the '*fruit*' of that unlawful conduct should be suppressed." *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992) (emphasis added). However, this Court has further held that the exclusionary rule "must be discerned in light of the facts in each case. When so considered, it is apparent that the rule does not require the

exclusion of evidence obtained after an illegal entry when that evidence is offered to prove the murder of one of the officers making the entry." *State v. Miller,* 282 N.C. 633, 641, 194 S.E.2d 353, 358 (1973). As we noted in *Miller,* application of the exclusionary rule to exclude evidence of crimes directed against the person of trespassing officers "would in effect give the victims of illegal searches a license to assault and murder the officers involved—a result manifestly unacceptable." *Id.* Therefore, in the case sub *judice,* regardless of whether Deputy West lawfully entered defendant's home, Lieutenant Medlin's eyewitness account of the events which transpired subsequent thereto is not barred by application of the exclusionary rule.

[2] Although it is thus unnecessary for this Court to discuss the legality of Deputy West's entry, we note that his entry into defendant's home was indeed lawful due to the presence of exigent circumstances. The United States Supreme Court held in *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639 (1980), that even when probable cause exists, a suspect may not be arrested in his home without an arrest warrant. However, in the presence of an emergency or dangerous situation described as an "exigent circumstance," officials may lawfully make a warrantless entry into a home to effect an arrest. *Id.* at 583, 63 L. Ed. 2d at 648-49. To determine whether exigent circumstances were present in the case *sub judice,* we must consider the totality of the circumstances. *State v. Worsley,* 336 N.C. 268, 282, 443 S.E.2d 68, 75 (1994). The United States Supreme Court has indicated that a suspect's fleeing or seeking to escape could be considered an exigent circumstance. *Minnesota v. Olson,* 495 U.S. 91, 109 L. Ed. 2d 85 (1990). The Supreme Court there stated in reviewing the lower court's decision:

> The Minnesota Supreme Court applied essentially the correct standard in determining whether exigent circumstances existed. The court observed that "a warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling."

*Id.* at 100, 109 L. Ed. 2d at 95 (quoting *State v. Olson,* 436 N.W.2d 92, 96 (Minn. 1989)). In the case *sub judice,* the defendant's actions, in suddenly withdrawing into his home and slamming the door, created the appearance that he was fleeing or trying to escape, and this coupled with the presence of a young child suddenly caught in such circumstances created an exigent circumstance justifying Deputy West's

entry without a warrant. We note that Deputy West clearly had probable cause to arrest defendant in light of the felony charges pending against defendant in both North Carolina and New York. Accordingly, based on the circumstances in this case, we hold that Deputy West's entry into defendant's home was indeed lawful. We conclude that the trial court correctly declined to suppress Lieutenant Medlin's eyewitness account of the shooting of Deputy West. This assignment of error is overruled.

[3] In his second assignment of error, defendant contends that the trial court committed reversible error by failing to exercise discretion in determining the proper response to a jury request with regard to the testimony of Lieutenant Medlin. We disagree. The record reflects that the trial court adequately complied with N.C.G.S. § 15A-1233(a), which governs the trial court's duty to respond to an inquiry from the jury.

At trial, while the jury was deliberating, the trial court received a paper writing from the jury inquiring about three items: two exhibits, including an enlargement of a 911 transcript, and a reference to "Medlin's testimony." The parties and the trial court discussed the meaning of the jury's request, and the trial court then decided that as to "Medlin's testimony," the jury was referring to a transcript of Lieutenant Medlin's testimony. The trial court stated in this regard, "Well, you know, frequently that's done. All of us know that." Pursuant to N.C.G.S. § 15A-1233(b), the State objected to the exhibits going into the jury room but agreed to the jury's reviewing the exhibits in the courtroom. The jurors were then returned to the courtroom, where the 911 transcript exhibit and one of defendant's exhibits were re-presented to them. The trial court then stated, "We do not have prepared transcripts of the testimony of each witness. It is the duty of the jury to recall the testimony of the witness as it was presented during the trial of the case." The jurors inquired no further with regard to Lieutenant Medlin's testimony and resumed their deliberations.

Defendant now asserts that the jury was not merely requesting a transcript of Lieutenant Medlin's testimony but, alternatively, was requesting the opportunity to have his testimony read back by the court reporter. Defendant thus claims the trial court erred because it did not exercise its discretion in deciding whether to allow the requested review. Assuming *arguendo* that the jury's inquiry was as defendant contends, we find the trial court properly exercised its discretion in this case. N.C.G.S. § 15A-1233(a) provides:

STATE v. GUEVARA

[349 N.C. 243 (1998)]

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

N.C.G.S. § 15A-1233(a) (1997). "This statute imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue." *State v. Ashe*, 314 N.C. 28, 34, 331 S.E.2d 652, 657 (1985). This Court has held that "[w]hen no reason is assigned by the court for a ruling which may be made as a matter of discretion . . . , the presumption on appeal is that the court made the ruling in the exercise of its discretion." *Brittain v. Piedmont Aviation, Inc.*, 254 N.C. 697, 703, 120 S.E.2d 72, 76 (1961).

In the case *sub judice*, the defendant has failed to show that the trial court abused its discretion under N.C.G.S. § 15A-1233(a) in declining to provide the jury a review of Lieutenant Medlin's testimony. This Court has held that a trial court does not commit reversible error by denying a jury request to review testimony of a particular witness when "[i]t is clear from [the] record that the trial court was aware of its authority to exercise its discretion and allow the jury to review the expert's testimony." *State v. Lee*, 335 N.C. 244, 290, 439 S.E.2d 547, 571, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994). However, this Court has found reversible error when a trial court's comments indicate that the court misunderstood its authority to allow a review of a witness' testimony or failed to exercise discretion in this regard. For instance, this Court concluded in *State v. Lang*, 301 N.C. 508, 272 S.E.2d 123 (1980), that the trial court's comment to the jury that "the transcript was *not available* to them was an indication that [it] did not exercise [its] discretion to decide whether the transcript should have been available under the facts of this case. The denial of the jury's request as a matter of law was error." *Id.* at 511, 272 S.E.2d at 125. In the case *sub judice*, the fact that the trial court considered the jury's request and acknowledged that it had the

authority to provide the jury with Lieutenant Medlin's testimony is indicated by the trial court's comment that "frequently that's done." The trial court did not say or indicate that it could not make the transcript or review of the testimony available to the jury. The record therefore reflects that the trial court considered, but in its discretion denied, the jury's request in compliance with the statute. Accordingly, this assignment of error is overruled.

[4] In his third assignment of error, defendant contends that the prosecutor was improperly permitted to argue over defendant's objection that the jurors could find that the statutory mitigating circumstances had no mitigating value. Defendant therefore contends that he is entitled to a new sentencing proceeding. We disagree. When read as a whole and viewed in the overall context in which the prosecutor's statements were made, we find that the jurors could not have been led to believe that they could accord the statutory mitigating circumstances no mitigating value.

This Court has held that a prosecutor's statements in jury argument "must be reviewed in the overall context in which they were made and in view of the overall factual circumstances to which they referred." *State v. Penland,* 343 N.C. 634, 662, 472 S.E.2d 734, 750 (1996), *cert. denied,* 519 U.S. 1098, 136 L. Ed. 2d 725 (1997). In this case, during jury argument, the prosecutor addressed statutory and nonstatutory circumstances. In concluding his argument, the prosecutor stated:

> The bottom line is I don't see how any of these mitigating factors have any mitigating value whatsoever . . . with what you are talking about. Do they reduce the moral culpability of what was done to Paul West? Now, you will next move on to weighing the aggravating and mitigating factors. And even if one or more of you should find that all of the mitigating factors not only exist but also have mitigating value, I contend to you that there is no way the mitigating factors outweigh the aggravating factors that the State has proven to you beyond a reasonable doubt.

In order for a prosecutor's argument to constitute prejudicial error, the "comments must have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Green,* 336 N.C. 142, 186, 443 S.E.2d 14, 40, *cert. denied,* 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Clearly, the prosecutor did not categorically tell the jurors that *they* could not give the statutory miti-

gating circumstances any mitigating value. In fact, the prosecutor went on to argue that if one or more jurors found the circumstances to "have mitigating value," the mitigators did not outweigh the aggravators.

Even assuming *arguendo* that the prosecutor's remarks did not fully and correctly state the law in this respect, these statements were certainly clarified by other means. First, the trial court correctly instructed the jury on the law regarding mitigating circumstances from the pattern jury instructions, making a clear distinction between statutory and nonstatutory mitigating circumstances. Further, the Issues and Recommendation as to Punishment form made this distinction clear. Second, the trial court repeatedly and clearly instructed the jurors to follow the law as it was given to them. Finally, both prosecutors and one of defendant's attorneys, in their closing arguments at the penalty phase, reiterated to the jurors their duty to follow the law as given to them by the trial court. We presume that juries follow the trial court's instructions. *State v. Richardson*, 346 N.C. 520, 538, 488 S.E.2d 148, 158 (1997), *cert. denied*, —— U.S. ——, 239 L. Ed. 2d 652 (1998); *State v. Johnson*, 341 N.C. 104, 115, 459 S.E.2d 246, 252 (1995). We therefore conclude that in light of the arguments overall and the trial court's correct instructions on mitigating circumstances, the jury could not have been misled and in fact followed these instructions. Accordingly, this assignment of error is overruled.

**[5]** In his fourth assignment of error, defendant contends that because Deputy West's death occurred during his illegal entry into defendant's residence, the trial court incorrectly submitted the aggravating circumstance that the murder was committed against a law enforcement officer "while engaged in the performance of his official duties." N.C.G.S. § 15A-2000(e)(8) (1997). We disagree. First, as we have noted above, Deputy West's entry was not illegal. Further, we reiterate that we need not address the legality of Deputy West's entry into defendant's mobile home because even if Deputy West improperly entered defendant's home, defendant had no right to use deadly force under the circumstances of this situation. N.C.G.S. § 15A-401(f) provides in part:

Use of Deadly Weapon or Deadly Force to Resist Arrest.—

(1) A person is not justified in using a deadly weapon or deadly force to resist an arrest by a law-enforcement officer using reasonable force, when the person knows or has reason to

know that the officer is a law-enforcement officer and that the officer is effecting or attempting to effect an arrest.

(2) The fact that the arrest was not authorized under this section is no defense to an otherwise valid criminal charge arising out of the use of such deadly weapon or deadly force.

N.C.G.S. § 15A-401(f)(1), (2) (1997). Therefore, in accordance with N.C.G.S. § 15A-401(f), even assuming *arguendo* that Deputy West in some way improperly performed his official duties, defendant was still not justified in using deadly force against a law enforcement officer attempting to effect an arrest. The (e)(8) aggravating circumstance was thus properly submitted to the jury. This assignment of error is overruled.

[6] In defendant's fifth assignment of error, he further contends that the trial court committed reversible error, depriving defendant of due process of law, by failing to exclude additional portions of the prosecutor's closing argument for death during the sentencing phase. Defendant first claims in this assignment of error that the prosecutor's victim-impact argument—unsworn assertions that Deputy West "was a good father, husband, son, brother and friend"—was unsupported by the evidence and improperly considered. We do not agree with this assessment.

In *State v. Moody*, 345 N.C. 563, 481 S.E.2d 629, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 125 (1997), this Court noted the United States Supreme Court held that

> "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed."

*Id.* at 573, 481 S.E.2d at 633 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 736 (1991)). Victim-impact statements may be admitted at a capital sentencing proceeding unless the evidence "is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. at 825, 115 L. Ed. 2d at 735. "Victim impact evidence is admissible in capital sentencing proceedings." *State v. Robinson*, 339 N.C. 263, 278, 451 S.E.2d 196, 205 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). This Court has held that the prosecution is allowed "some latitude in fleshing out the

humanity of the victim so long as it does not go too far." *State v. Reeves*, 337 N.C. 700, 723, 448 S.E.2d 802, 812 (1994), *cert. denied*, 514 U.S. 1114, 131 L. Ed. 2d 860 (1995).

A review of the record reflects that the prosecutor's comments that Deputy West "was a good father, son, brother and friend" were in fact supported by the evidence. In her testimony, the wife of Deputy West spoke about him in reference to his family and identified a guardian angel pin which he wore on his uniform and a photograph of him. From Mrs. West's testimony, the photographs and the angel pin, the prosecutor emphasized to the jury that Deputy West was a family man. The prosecutor also referred to Lieutenant Medlin's testimony and to Deputy West's first words to the defendant, "hey good buddy," to suggest to the jury that these words reflected the kind of man Deputy West was.

**[7]** Although defendant failed to object during the prosecutor's closing argument, he now contends that the prosecutor improperly stated, "I think you can tell from the size of the crowd which had attended most of this trial," to suggest that Deputy West was a family man. Although the number of people attending the trial is an indicator of community interest and possibly esteem, this alone was clearly not evidence as to what kind of man Deputy West was. We nevertheless conclude that this limited comment, particularly in light of the other evidence, was not so grossly improper as to require the trial court to intervene *ex mero motu*.

**[8]** Defendant additionally contends that the prosecutor's victim-impact argument went too far. The prosecutor argued:

> The second reason I say this trial is coming at a most appropriate time is the passage of this past Sunday's Father's Day. And on that very day immediately after winning the NBA championship and being recognized perhaps as the greatest basketball player to ever live, Michael Jordan felt pain, not joy. Why? . . . Because he wept like a baby.

The trial court sustained defendant's objection to this comment. Although this argument was improper, it was not so grossly improper as to result in a denial of due process. It was, in essence, a meaningless, irrelevant aside, having nothing to do with the defendant or the trial. Thus, we conclude this comment did not "stray so far from the bounds of propriety as to impede the defendant's right to a fair trial." *State v. Davis*, 305 N.C. 400, 422, 290 S.E.2d 574, 587 (1982). Further,

the trial court properly sustained defendant's objection which "advised the jurors that they should not consider the statement." *State v. Larry*, 345 N.C. 497, 527, 481 S.E.2d 907, 924, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 234 (1997).

[9] Defendant next argues that the prosecutor used the lyrics of a song to improperly suggest that the cards were procedurally stacked against the State at the sentencing phase and to exploit or impugn defendant's right to counsel. The prosecutor stated:

> And I can think of no better expression of this sentiment than the words of a song, a requiem, if you will, that I want to leave with you.
>
> Somebody killed a policeman today and a part of America died. A piece of country that he swore to protect will be buried right by his side. The suspect who shot him must stand up in court with counsel demanding his rights. While the young widowed mother must work for her kids and cry a many a long, long night.

We do not conclude that the lyrics of this song suggest that the cards were procedurally stacked against the State or that they in any way implicated or impugned defendant's right to counsel. Even assuming *arguendo* that these lyrics could be interpreted as defendant contends, this argument is clearly not so unduly prejudicial as to render the sentencing phase of the trial fundamentally unfair. Trial counsel is allowed wide latitude in argument to the jury and may argue all of the evidence which has been presented as well as reasonable inferences which arise therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). We further emphasize that

> statements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred. Further, it must be remembered that the prosecutor in a capital case has a duty to strenuously pursue the goal of persuading the jury that the facts of the particular case at hand warrant imposition of the death penalty.

*Green*, 336 N.C. at 188, 443 S.E.2d at 41. This Court has also noted that although counsel is allowed wide latitude in both the guilt-innocence and sentencing phases of trial, " 'the foci of the arguments in the two phases are significantly different, and rhetoric that might be prejudicially improper in the guilt phase is acceptable in the sentenc-

ing phase.' " *State v. Bishop*, 343 N.C. 518, 552, 472 S.E.2d 842, 860 (1996) (quoting *State v. Artis*, 325 N.C. 278, 324, 384 S.E.2d 470, 496 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)), *cert. denied*, 519 U.S. 1097, 136 L. Ed. 2d 723 (1997). Thus, based on these principles, we hold that the trial court did not err in failing to exclude *ex mero motu* these comments by the prosecutor.

**[10]** Finally, defendant contends the prosecutor improperly argued general deterrence. The prosecutor argued:

> State's exhibit number 9, it is not pleasant to look at it. And I know undoubtedly you feel that you've seen it enough, but that's the way Paul West was left and his plea was answered. You see unless the killing of a law enforcement officer is dealt with the utmost seriousness, then the disrespect for law and order that is inherent in that despicable act is encouraged.

We conclude that this argument in overall context did not constitute a general deterrence argument but merely focused the jury's attention on the seriousness of the crime and the importance of the jury's duty. We have previously held that the prosecutor is allowed to argue the seriousness of the crime. *State v. Barrett*, 343 N.C. 164, 181, 469 S.E.2d 888, 898, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 259 (1996); *see State v. Jones*, 339 N.C. 114, 159, 451 S.E.2d 826, 850 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995); *State v. Artis*, 325 N.C. at 329, 384 S.E.2d at 499.

We conclude that all these statements complained of did not result in a denial of " 'that fundamental fairness essential to the very concept of justice.' " *Donnelly v. De Christoforo*, 416 U.S. 637, 642, 40 L. Ed. 2d 431, 436 (1974) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 86 L. Ed. 166, 180 (1941)). We hold that all of defendant's complaints under this assignment of error are not so unduly prejudicial so as to deny defendant fundamental fairness in the sentencing proceeding.

## PRESERVATION ISSUES

**[11]** Defendant, in his sixth assignment of error, asserts that the trial court violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution in not allowing him the opportunity for allocution before the jury. This Court has previously ruled that it is not error for the trial court in a capital case to disallow allocution. *State v. Wright*, 342 N.C. 179, 463

S.E.2d 388 (1995). Upon consideration of defendant's argument and authorities cited, we find no compelling reason for this Court to overrule our prior holding on this issue. This assignment of error is overruled.

[12] In his seventh assignment of error, defendant asserts that the trial court committed federal constitutional error in submitting to the jury the (e)(11) course of conduct aggravating circumstance, in that the jury did not mark the verdict sheet and so did not convict defendant under the felony murder rule. *See* N.C.G.S. § 15A-2000(e)(11). We first note that the jury in this case additionally convicted defendant of assault with a deadly weapon with intent to kill inflicting serious injury. Furthermore, this Court has held contrary to defendant's position in *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). In the case *sub judice*, as in *McCollum*, the jury failed to answer both questions on the verdict sheet with respect to whether defendant was guilty on the basis of malice, premeditation and deliberation and under the felony murder rule. The jury's failure to follow the trial court's instructions to give a "yes" or "no" answer to both questions does not indicate that the jury found defendant blameless under the felony murder rule. *Id.* at 220-22, 433 S.E.2d at 150-51. The jury's affirmative response that it did find defendant guilty of first-degree murder under one theory, on the basis of malice, premeditation and deliberation, does not indicate that the jury rejected conviction under another theory, in this case the felony murder rule. *See id.* This assignment of error is without merit.

[13] Next, in his eighth assignment of error, defendant contends that the trial court committed federal constitutional error in its use of the word "may" in sentencing Issues Three and Four. Defendant acknowledges that this Court has previously decided this issue adversely to defendant's position and upheld the constitutionality of this instruction. *State v. Lee*, 335 N.C. at 286-87, 439 S.E.2d at 569-70. We find no basis for reversing our prior holding in this regard. Accordingly, this assignment of error is overruled.

[14] In his ninth assignment of error, defendant contends that the trial court erred by instructing the jury on nonstatutory mitigating circumstances in a way which allowed the jurors to reject such circumstances on the basis that they had no mitigating value. As defendant acknowledges, this Court has previously found this argument to be without merit. It is well established under North Carolina law that

the instruction given by the trial court in this regard is correct and not in violation of either our state or federal Constitution. *State v. Womble*, 343 N.C. 667, 694, 473 S.E.2d 291, 307 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719 (1997). As we have previously stated, this instruction does not limit or prevent the jury's consideration of any relevant evidence in mitigation but merely requires the jury to find both the existence of the nonstatutory circumstance and that it has mitigating value. *State v. Stephens*, 347 N.C. 352, 366, 493 S.E.2d 435, 444 (1997), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 66 (1998). We therefore reject this assignment of error.

**[15]** In his tenth assignment of error, defendant argues that the trial court erred by instructing the jury that it must be satisfied that any mitigating circumstance exists. This Court has repeatedly rejected this argument. *State v. Payne*, 337 N.C. 505, 531-33, 448 S.E.2d 93, 108-09 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995). We have consistently held that "[i]t is the responsibility of the defendant to go forward with evidence that tends to show the existence of a given mitigating circumstance and to prove its existence to the satisfaction of the jury." *State v. Hutchins*, 303 N.C. 321, 356, 279 S.E.2d 788, 809 (1981); *see also State v. Green*, 336 N.C. at 185, 443 S.E.2d at 39; *State v. Brown*, 306 N.C. 151, 178, 293 S.E.2d 569, 586-87, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982). We find no compelling reason to reconsider our prior holding in this regard. Accordingly, this assignment of error is overruled.

## PROPORTIONALITY REVIEW

Having found no error in either the guilt/innocence phase of defendant's trial or the capital sentencing proceeding, we are required by statute to review the record and determine (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether passion, prejudice or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly reviewing the record, transcript and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

One purpose of proportionality review is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Another "is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we compare this case to others in the pool, as defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon*, 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995), that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. at 198, 443 S.E.2d at 47.

**[16]** The sentence of death in this case is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). The jury in this case found both aggravating circumstances that were submitted. First, the jury specifically found that the murder was committed against a law enforcement officer engaged in the performance of his official duties. N.C.G.S. § 15A-2000(e)(8). Second, the jury found that the murder was part of a course of conduct in which defendant engaged and which included a crime of violence against another person. N.C.G.S. § 15A-2000(e)(11). As Justice (now Chief Justice) Mitchell succinctly stated in *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984):

> The murder of a law enforcement officer *engaged in the performance of his official duties* differs in kind and not merely in degree from other murders. When in the performance of his duties, a law enforcement officer is the representative of the public and a symbol of the rule of law. The murder of a law enforcement officer engaged in the performance of his duties in the truest sense strikes a blow at the entire public—the body politic—and is a direct attack upon the rule of law which must prevail if our society as we know it is to survive.

*Id.* at 488, 319 S.E.2d at 177 (Mitchell, J., concurring in part and dissenting in part). The United States Supreme Court has also recog-

nized the importance of protecting our nation's police officers. In *Roberts v. Louisiana*, 431 U.S. 633, 52 L. Ed. 2d 637 (1977), the Supreme Court stated: "There is a special interest in affording protection to these public servants who regularly must risk their lives in order to guard the safety of other persons and property." *Id.* at 636, 52 L. Ed. 2d at 641.

This Court has found death sentences disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163; *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We find the instant case distinguishable from each of these cases. None of these cases, with the exception of *State v. Hill*, involved the first-degree murder of a police officer engaged in the performance of his official duties. The brutal murder in the case *sub judice* was also part of a course of conduct which included another violent crime, the severe wounding of another police officer. This case is distinguishable from *Hill*, where the defendant was also convicted of the first-degree murder of a police officer and sentenced to death. There, the defendant was convicted of first-degree murder for killing a police officer with the officer's own gun after the two struggled. This Court vacated the sentence of death because of speculative evidence about what the defendant was doing prior to his encounter with the officer and lack of evidence as to who drew the murder weapon out of the officer's holster. We find the present case distinguishable from *Hill* in several respects. First, in the case *sub judice*, defendant stood in his mobile home and used his own rifle to kill Deputy West, including the firing of shots at him while the officer lay on the floor facedown, his weapon still inside its holster. Second, defendant shot another officer, Lieutenant Medlin, from a distance, severely wounding him. Third, after shooting both officers, defendant made no effort to assist the officers but instead leapt into his truck and quickly fled. Fourth, the jury convicted defendant of first-degree murder under the theory of premeditation and deliberation and found the existence of two aggravating circumstances: (1) the murder was committed against a law enforcement officer in the performance of his official duties, the

STATE v. GUEVARA

[349 N.C. 243 (1998)]

(e)(8) aggravating circumstance; and (2) the murder was part of a course of conduct including other violent crimes, the (e)(11) aggravating circumstance. "The course of conduct circumstance is often present in cases where the jury imposes death instead of life imprisonment." *State v. Miller*, 339 N.C. 663, 694, 455 S.E.2d 137, 154, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995).

This case is similar to cases in which we have found the death penalty proportionate. In *State v. Harden*, 344 N.C. 542, 476 S.E.2d 658 (1996), *cert. denied*, 520 U.S. 1147, 137 L. Ed. 2d 483 (1997), we affirmed a sentence of death where the defendant shot two police officers who were trying to arrest him. The jury there found the same two aggravating circumstances as found here. Similarly, in *State v. Page*, 346 N.C. 689, 488 S.E.2d 225 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 651 (1998), we affirmed a sentence of death where the jury found the same two aggravators. We thus conclude that this case is similar to cases in which we have found the sentence of death proportionate and not similar to any case where we have found the death penalty disproportionate.

We hold that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.

Justice WYNN did not participate in the consideration or decision of this case.

Justice FRYE concurring.

I agree that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error, and that defendant's sentence of death is not disproportionate.

I agree with the majority that "in the case *sub judice*, regardless of whether Deputy West lawfully entered defendant's home, Lieutenant Medlin's eyewitness account of the events which transpired subsequent thereto is not barred by application of the exclusionary rule." *State v. Guevara*, 349 N.C. 243, 250, 506 S.E.2d 711, 716 (1998). However, I also agree with the majority that "it is unnecessary for this Court to discuss the legality of Deputy West's entry." *Id.* Accordingly, I would neither discuss nor decide this issue.

Justice WHICHARD joins in this concurring opinion.